John BERG, Appellant,

v.

The STATE of Texas, Appellee.

No. 451–83.

Court of Criminal Appeals of Texas,
En Banc.

Nov. 14, 1984.

Rehearing Denied March 30, 1988.

Stan Brown, Abilene, Arch C. McColl, III, David W. Coody, Dallas, for appellant.

Patricia A. Elliott, Former Dist. Atty., Jorge Solis, Dist. Atty., and Michael Watson, Asst. Dist. Atty., Abilene, Robert Huttash, State's Atty., and Cathleen Riedel, Asst. State's Atty., Austin, for the State.

## OPINION ON APPELLANT'S PETITION FOR DISCRETIONARY REVIEW

MILLER, Judge.

This is an appeal from a conviction of third degree felony theft of a diamond under V.T.C.A. Penal Code, § 31.03(a) and (b)(1). The punishment is three years confinement in the Texas Department of Corrections. On direct appeal, the Eastland Court of Appeals affirmed appellant's conviction in an unpublished opinion delivered March 24, 1983. We granted appellant's supplemental petition for discretionary review to determine whether the evidence is sufficient to sustain his conviction. We affirm.

The evidence, reviewed in a light most favorable to the verdict, reveals that Karen Bonham's residence was burglarized by a juvenile on July 9th, 1980. Among other things, a wedding set consisting of a wedding band and engagement ring were stolen. The engagement ring contained a one-quarter carat diamond.

Subsequent investigation of the burglary, including discussion with the juvenile, led the investigating officer to the Goldsmith Shop, an Abilene jewelry store managed and co-owned by the appellant. The officer's examination of the jeweler's records revealed that on July 11, 1980, the appellant had issued a twenty-three dollar check for "scrap cash." The evidence establishes that this check was used to purchase the rings from the juvenile burglar. The investigating officer then directed Bonham to the Goldsmith Shop in her search for the missing jewelry.

On July 17, 1980, Bonham went to the Goldsmith Shop and discussed with appellant the possibility that he was in possession of her rings. "After much persuasion," appellant allowed Bonham to search through scrap metal that had been packaged for the smelter. Bonham immediately recognized her rings. The engagement ring no longer contained the one-quarter carat diamond, as two of the mounting prongs were clipped away and the diamond had been removed. The evidence establishes that the diamond was in the ring when it entered appellant's possession.[1] Bonham testified that she then described the diamond to appellant, who said he would contact her later.

The next day, on July 18, 1980, the appellant phoned Bonham and informed her she could pick up the rings. Appellant gave her a ziplock bag containing her rings and a stone wrapped in Scotch tape. Bonham testified that she believed the stone to be the diamond originally mounted in her engagement ring.

Although the package containing the stone bore the notation "DIAMOND", sub-

---

1. In appellant's original petition for discretionary review, he alleges that the evidence is insufficient to establish the diamond was in the ring when it entered his possession. Although we did not grant appellant's original petition for discretionary review, we pause to note the following.

State rebuttal witness Cindy Mahoney, a former employee of the appellant, was present on the day appellant purchased the jewelry from the juvenile. She testified that *after* appellant had purchased the rings, she examined the engagement ring with an "eye loop" (jeweler's eyepiece). It contained a one-quarter carat diamond.

Although appellant denied the ring contained a diamond when he purchased it, the jury, as the trier of fact, was charged with determining truthfulness. *Ables v. State*, 519 S.W.2d 464 (Tex.Cr.App.1975); *Johnson v. State*, 503 S.W.2d 788 (Tex.Cr.App.1974).

sequent events revealed that it was an inexpensive cubic zirconia. Bonham testified that she did not tell appellant she would accept a cubic zirconia in replacement for her diamond.

The evidence establishes that the value of the missing one-quarter carat diamond exceeded $200, but was less than $10,000.

In a two-count indictment, appellant was charged with theft in violation of V.T.C.A. Penal Code, § 31.03(a) and (b)(1). The first count alleged theft of the wedding set on July 11, 1980, the day appellant purchased the rings from the juvenile. The second count alleged theft of the diamond on July 18, 1980, the day appellant substituted a cubic zirconia for Bonham's diamond. The trial court submitted the case to the jury under the second count of the indictment, *but not the first.*

Under the new penal code, there are two distinct methods of committing theft.[2] Theft may be committed by appropriating stolen property knowing it was stolen by another, § 31.03(b)(2), or theft may be committed by appropriating the owner's property without his effective consent, § 31.03(b)(1).

■ In *Casey v. State,* 633 S.W.2d 885 (Tex.Cr.App.1982), this Court held that when the proof at trial shows a theft by appropriating stolen property knowing it was stolen by another, 31.03(b)(2), but theft is alleged under 31.03(b)(1), the evidence is insufficient to sustain the conviction. Thus, if the evidence establishes *only a transfer* of stolen property, and fails to show that the defendant was involved in the initial appropriation from the owner,

the State must proceed under 31.03(b)(2) or the conviction will be reversed.

In a supplemental petition for discretionary review, appellant contends that the evidence is insufficient to support the verdict. Specifically, appellant relies on *Casey* and asserts that the State has failed to prove that appellant was involved, either personally or acting as a party, in the initial appropriation of the property from its owner. While appellant's assertion is correct, his reliance on *Casey* is misplaced.

The appellant in this case was not tried for theft based on the transfer of stolen property to him, as was the defendant in *Casey.* On the contrary, appellant was tried for theft based on his own appropriation of the diamond after it was in his possession. The theory was not that appellant was a party to the theft by the juvenile, but that the appellant was a principal in the subsequent theft by deception.[3]

■ Under *Casey,* and the case as submitted to the jury, the appellant held the rings and diamond lawfully on July 11, 1980, the day he purchased them from the juvenile burglar. At that time, under *Casey,* he was not guilty of appropriating property without the owner's effective consent.

On July 17, 1980, appellant learned that Bonham had a greater right to possess it. She was the true owner. V.T.C.A. Penal Code, § 1.07(24).

■ The next day, July 18, 1980, with knowledge of the circumstances, V.T.C.A. Penal Code, § 6.03(b), appellant gave Bonham a cubic zirconia instead of her diamond.[4] That was the day he committed

---

2. V.T.C.A. Penal Code, § 31.03, provides in pertinent part:

   "(a) A person commits an offense if he unlawfully appropriates property with intent to deprive the owner of property. (b) Appropriation of property is unlawful if:
   (1) it is without the owner's effective consent; or
   (2) the property is stolen and the actor appropriates the property knowing it was stolen by another."

3. Consent is not effective if induced by deception. V.T.C.A. Penal Code, § 31.01(4)(A).

4. The evidence establishes that the diamond was in the ring when it came into appellant's store on July 11. Appellant denies he received the diamond at that time. On July 17, Bonham told appellant that her ring had originally contained a diamond. The next day, appellant furnished Bonham with a cubic zirconia, instead of a diamond.

   Viewed in a light most favorable to the verdict, this circumstantial evidence is sufficient to support a jury's belief that appellant continued to exercise control over the diamond on July 18, 1980. Appropriate means to acquire or otherwise exercise control over property. V.T.C.A. Penal Code, § 31.01(5)(B).

theft. There is no need to show he was a party to the burglary. Under these facts appellant committed a separate offense when he switched the stones. And as the second count of the indictment alleged, and the jury found by its unanimous verdict, on July 18, 1980, appellant did then and there unlawfully, knowingly and intentionally appropriate a diamond without the effective consent of the owner with intent to deprive her of it.

The verdict is supported by the evidence, and the judgments of the Court of Appeals and the trial court are affirmed.

Although the case was submitted to the jury on the second count of the indictment which alleged the offense was committed July 18, 1980, and that was the verdict reached by the jury, we note that the judgment of the court erroneously recites that the offense was committed on July 11, 1980.

█ When the judgment is contrary to the verdict, this Court has authority to reform and correct a judgment to reflect the true finding of the fact finder. Article 44.24(b), V.A.C.C.P.; *Milczanowski v. State*, 645 S.W.2d 445 (Tex.Cr.App.1983); *Joles v. State*, 563 S.W.2d 619 (Tex.Cr.App. 1978); *Teamer v. State*, 557 S.W.2d 110 (Tex.Cr.App.1977).

It is so ordered.

TEAGUE, J., dissents.

1. " 'Theft' is the fraudulent *taking of* corporeal personal *property* belonging to another from his possession, or from the possession of some person holding the same for him, without his consent, with intent to deprive the owner of the value of the same, and to appropriate it to the use or benefit of the person taking." (All emphasis is supplied throughout by the writer of this opinion unless otherwise indicated.)

2. "Whoever shall *receive* or conceal *property* which has been *acquired by another* in such a manner as that the acquisition comes within the meaning of the term theft, *knowing the same to have been so acquired* shall be punished in the same manner as if he had stolen the property."

3. Section 31.03, supra, provides in part:

CLINTON, Judge, dissenting.

In this case, the court of appeals found the evidence sufficient to support a conviction for theft. That evidence neither establishes that appellant participated in the initial acquisition of the property, nor that he exercised control over the previously stolen property knowing it was stolen by another.

In his petition for discretionary review, appellant correctly pointed out that a panel opinion of this Court has construed our present theft statute to proscribe only "two distinct" types of conduct—what would have essentially constituted "theft" and "receiving and concealing" under old Articles 1410 [1] and 1430,[2] Vernon's Ann.P.C. (1925), respectively—focusing primarily on the manner in which the actor *acquired* the property. *Casey v. State*, 633 S.W.2d 885 (Tex.Cr.App.1982). In other words, appellant's petition relies on the holding of *Casey*, supra, that V.T.C.A. Penal Code, § 31.03(a) and (b)(1),[3]

> "requires [in addition to the express elements of the offense,] that the accused *participate*, either personally or acting as a party *in the initial* unlawful [*actual taking*] [4] *of the property from its owner*. See *Cooper v. State*, 537 S.W.2d 940 (Tex.Cr.App.1976)."

*Casey*, supra, at 887.

Appellant, like Casey, was indicted for conduct proscribed by § 31.03(a) and (b)(1), supra. Thus, he naturally argues in his petition for discretionary review:

> "The facts of this case fall directly within the rule set out in *Casey*. Here, there

"(a) A person commits an offense if he unlawfully appropriates property with intent to deprive the owner of property;
"(b) Appropriation is unlawful if:
"(1) it is without the owner's effective consent;
"(2) the property is stolen and the actor appropriates the property knowing it was stolen by another."
V.T.C.A. Penal Code, § 31.01(5), provides that, in the present context, " 'Appropriate' means: (B) to acquire *or* otherwise exercise control over property other than real property."

4. Though the author of *Casey* used the word "appropriation," one only need go to the case he then cited, *Cooper v. State*, 537 S.W.2d 940 (Tex. Cr.App.1976), to see his intended meaning was "actual taking."

is not one whit of evidence that in any way connects the Appellant to the burglary of the Complainant's house either as an actor or a party. It is, in fact, *undisputed* that Appellant had nothing to do with the initial appropriation of the diamond ring. Absent such proof, *Casey* makes it clear that the evidence is insufficient to prove a violation of § 31.03(b)(1) as alleged. [Emphasis original]."

The Assistant State Prosecuting Attorney contends that *Casey* should be overruled because, among other reasons, it places a burden on the State by adding an additional element to the constituents of theft which was not only uncontemplated by the Legislature, but is in fact directly contrary to the express intent of Chapter 31.

Thus the issue for review has been clearly drawn. The soundness of *Casey*—its rationale having not been tested by rehearing before the court *en banc*—was the question on which we granted review in this cause. But the majority opinion has wholly failed to address appellant's contention, and in fact has reached a result in this case which is not attainable without overruling *Casey*.

I would address the question presented for review and in the doing expressly overrule *Casey* as the most unsupportable judicial assault on the new penal code to date. Because the majority does not, I dissent.

## I.

### QUESTION FOR REVIEW

The error of *Casey* is most graphically demonstrated in cases where the circumstances of the appellant's acquisition of the

property are unknown and unprovable. E.g., *Mulchahey v. State,* 574 S.W.2d 112 (Tex.Cr.App.1978). What *was* shown in *Mulchahey,* supra, was an exercise of control over several vehicles by the defendant, coupled with knowledge he did not have the respective owners' consent and his intent to deprive the owners of the vehicles—just what the theft statute prohibits. V.T.C.A. Penal Code, 31.03(a). His claim on appeal —that the State proved neither that he initially took the vehicles nor that he knew they were stolen when he acquired them— was rejected on the basis that the statute does not require such proof.

Thus, if the reasoning and holding of *Casey* are correct, Ray Leroy Mulchahey has been wrongly convicted of theft and should be immediately released upon proper application. I venture to say, however, that no member of this Court would disagree that the evidence established Mulchahey committed a theft as contemplated by § 31.03(a).

The error of *Casey* is its focus on the manner of acquisition of property, a focus the Legislature removed from the theft statute in the 1974 penal code,[5] then further refined in the 1975 legislative session.[6] Just as it was recognized that the actor's intent to "benefit himself or another" or to "withhold the property permanently" were not essential to commission of a theft, so too was it acknowledged that the "manner of acquisition" was inconsequential to the evil of a theft: the gravamen of theft, the conduct forbidden is in *depriving the true owner of the use, benefit, enjoyment or value of his property*, without his consent.

Thus, the varying misleading emphases on aspects of acquisitive conduct formerly proscribed under the old penal code were

5. The unlawful manner of acquisition of property was acknowledged to be the gravamen of *other* offenses such as robbery and burglary where obtaining property by force, violence or unlawful entry was seen to be the primary evil sought to be prevented, and thus the focus of those crimes.

6. The original form of § 31.03(a) and (b) made a distinction between two types of alternative "forbidden conduct" elements of theft: "obtains" and "exercises control over" property.

Both of these alternatives were removed by the 1975 amendment which substituted the single forbidden conduct element "appropriates." The definition of "obtain" contained originally in § 31.01(5) became part of the definition of "appropriate," amending the same provision in 1975, effective September 1, 1975. *Casey* also scrupulously avoids attention to this clear manifestation of the Legislature's intent to remove the "manner of acquisition" from the offense of theft.

sifted out by the new, and a single offense was distilled from the common elements contained in each: clearly, if one exercises control over property knowing it is without the owner's consent, and intending to deprive the owner of it, it matters not "how" the actor got the property, whether he intended to benefit himself or another, intended to "permanently" deprive the owner, etc.[7]

One of the single biggest problems faced by prosecutors under the old theft statutes was in proving "receiving and concealing" cases because the proof turned on whether the accused had knowledge of a circumstance surrounding his "receipt" of the property—that being that the property was stolen. Since this scienter is one not inferable from the act of "receipt" of the property alone, there was often no way to convict "fences" or other persons dealing in stolen goods, *even if the proof clearly established a knowing nonconsensual possession of the property to the exclusion of the true owner with the intent to deprive the owner of the property.*

Thus, there were at least two innovations in the new code designed specifically to assist in prosecuting such patently guilty persons: (1) the "exercise of control" feature of "appropriation" which dispensed with the necessity of a "receipt" of property and, perforce, knowledge it was stolen at that very moment;[8] and, (2) in the event the prosecution *could* prove the actor had participated in numerous similar receipts of property which, in fact, was stolen, § 31.03(c)(1) allowed proof of those transactions to show knowledge of the property's stolen status. See also V.T.C.A. Penal Code, § 31.03(c)(2)–(4).

"*Few* property transactions *do not* involve the acquisition of another's property with intent to deprive him of it," Committee Comment to § 31.03. Thus, the committee (and later the Legislature) recognized that what separates lawful acquisitive conduct from theft is a crucial "circumstance surrounding the conduct"[9]—that the acquisition is "without the owner's consent." The crime of theft requires the "forbidden conduct" element of the offense[10] ("exercise of control over property") to be accompanied by this "circumstance surrounding the conduct," and V.T.C.A. Penal Code, § 6.03(b), requires proof of the actor's knowledge of that "circum-

---

**7.** Wholly ignored by the *Casey* panel is the unambiguous declaration by the Legislature that "theft constitutes a single offense superceding the separate offenses previously known as [among others] theft ... and receiving or concealing stolen property." V.T.C.A. Penal Code, § 31.02.

Section 31.02—like 31.01 and 31.03—was adopted in 1973 as proposed by the State Bar Committee on Revision of the Penal Code, Final Draft 1970. That Committee explained its intent in consolidating all theft offenses in § 31.02:

"No part of the penal code has produced more confusion, more appellate litigation, and more reversals on [matters] *unrelated to the actor's guilt or innocence* than the multitude of offenses proscribing criminal acquisitions of another's property. Although the theft offenses attempt to separate guilty from innocent acquisitions, ... their effect all too often is to embroil the courts in nice questions about the appropriateness of conviction under *one offense label as opposed to another. The present distinctions ... are unnecessary for establishing the point at which acquisitive conduct becomes criminal ...*; they do, however, place unnecessary obstacles before conviction of the guilty.

For this reason, the committee decided to consolidate most theft offenses into a single, comprehensive offense *aimed at the harm* that accompanies the acquisitive conduct, *however the acquisition is accomplished.* * * * Theft is a single offense with a uniform culpable mental state, a uniform result, uniform penalties, and uniform defenses, *all of which focus on culpability rather than, as under present law, whether the State is pursuing the defendant under the appropriate offense label.*" Texas Penal Code: A Proposed Revision, Final Draft 1970, Committee Comment to § 31.02 [hereinafter Committee Comment].

**8.** "['Exercising control'] covers not only purse snatching, shoplifting, and other thefts by strangers, but also receiving or concealing stolen property and the conduct of persons who possess another's property with consent but exercise their possessory rights in a manner that deprives the owner of the property." Committee Comment to § 31.03.

**9.** See V.T.C.A. Penal Code, § 6.03.

**10.** V.T.C.A. Penal Code, § 1.07.

stance surrounding the conduct:" that the conduct is "without the owner's consent." With this crucial feature, the actor's acquisitive conduct is clearly "unlawful."

It is logically apparent that *one way* to prove the actor had "knowledge" that his exercise of control over property was "without the owner's consent" is to prove that at some point during his exercise of control he "knew it was stolen by another."[11] Thus, "knowing the affected property was stolen by another" is merely a subset of "knowing it is without the owner's consent." *Casey*, however, treats these "circumstances surrounding the conduct" as mutually exclusive.[12]

Not only is such a treatment patently illogical in fact, but it also conflicts with the express legislative history of the statute:

> "Section 31.03(b)(2) provides that it is 'unlawful' to ... exercise control over property the owner [sic] knows is stolen; thus the receiver is guilty of theft under Section 31.03. *'Receiving' is included out of an abundance of caution rather than out of necessity, because one who obtains or exercises control over property he knows is stolen does so [knowing it is] without the owner's effective consent as clearly as when he physically steals the property himself.*"
>
> Committee Comment to § 31.03.

Thus, it is clear that the general allegation that the conduct and accompanying mental state (appropriation with the intent to deprive) were done "unlawfully," or even "without the owner's consent," would support a conviction for theft in which the proof established the actor's "initial taking," his "receipt knowing the property was stolen" or neither such mode of acquisition, so long as all elements of theft were proved. Section 31.03(b)(1) and (2) simply do not provide the "nature of the forbidden conduct;" instead, they are both only *"circumstances surrounding* the conduct," which in no way constitute "acts or omissions" of the defendant. It follows that these provisions have evidentiary import only in terms of establishing the "unlawfulness" of the appropriation, and the defendant is not entitled to have them expressed in the State's charging instrument as a matter of "form" under *Thomas v. State*, 621 S.W.2d 158 (Tex.Cr.App.1981) (Opinion on State's Motion for Rehearing), much less substance.[13]

In sum, neither the rationale nor holding of *Casey* is supported by logic or legal authority; in fact, *Casey* flies in the face of the Legislature's express purpose in consolidating theft offenses. It attempts to reduce the offense of theft to "two separate and distinct ways in which the offense could be committed" which, with deference, is nothing short of sheer fantasy. There are myriad "ways in which the offense could be committed;" but *Casey* attempts to elevate mere matters of proof to "distinct elements" comprising "two separate" offenses, then, adding insult to injury, it tacks on a new "element of the offense" ("initial actual taking") to boot! Perhaps to some this simplifies things; to me it legalizes illegal conduct.[14] There is cer-

---

**11.** It simply cannot be argued with any logic that a person who exercises control over property he knows was stolen by another *does not know* his exercise is without the true owner's consent.

**12.** The assertion in *Casey* at 886–887 that "the Legislature while creating only one offense provided two separate and distinct ways in which the offense could be committed" is not only semantically oxymoronic, but is also plain wrong as a practical matter.

**13.** It is with great reluctance I have concluded that the Court's opinion in *Reynolds v. State*, 547 S.W.2d 590 (Tex.Cr.App.1977) (Opinion on Motion for Rehearing) is wrong. Indeed, a careful reading of that opinion reveals not even an attempt by the Court to justify its conclusion, and in fact a hopeless confusion of principles of "form" (notice) with "substance" (elements of offense).

**14.** By adding an "element" to each of the supposedly two distinct ways to commit theft, much conduct falls between the cracks. E.g., *Mulchahey*, supra.

Furthermore, if only two of twelve old code theft offenses were successfully brought forward by the Legislature (notwithstanding the "attempt in the new code to consolidate" them, *Casey*, at 866), are the other ten now legal to commit? See § 31.02, supra.

tainly no principled reason, compelling or even weak, to revive the very problems the Legislature sought to eliminate in the new penal code, as well as create new ones. Yet that is the result accomplished by *Casey*. It should be overruled.

## II.

### SUFFICIENCY OF EVIDENCE

But since a majority of the Court does not see fit to examine, and necessarily then overrule, *Casey*, its holding should be applied equally to the appellant here. There is no evidence appellant participated, either personally or acting as a party in the initial actual taking of the diamond from its owner. Under *Casey*, he cannot be guilty of § 31.03(b)(1) theft without this proof. The majority opinion apparently would interpret the evidence as showing appellant was *still* "exercising control over" ("appropriating") the diamond on July 17th when it was first proved he gained "knowledge it was stolen by another" from the diamond's owner, Mrs. Bonham. Even if the evidence established this, under *Casey* such would constitute an offense *only* under § 31.03(b)(2)—a theory not alleged in the indictment. The evidence is insufficient under *Casey* any way it is measured.

I dissent.

ONION, P.J., joins.

### OPINION ON APPELLANT'S MOTION FOR REHEARING ON PETITION FOR DISCRETIONARY REVIEW

McCORMICK, Judge.

Appellant was convicted of third degree felony theft under V.T.C.A., Penal Code, Section 31.03(a) and (b)(1). He was sentenced to three years' imprisonment. On original appeal, appellant argued that the evidence was insufficient to support his conviction. In an unpublished opinion, the Eastland Court of Appeals disagreed and found the evidence sufficient. *Berg v. State*, No. 11–82–074–CR, delivered March 24, 1983 (Tex.App.—Eastland 1983). We granted appellant's petition for discretionary review to examine the sufficiency of the evidence. On original submission to this Court, Judge Miller, writing for the majority, found the evidence sufficient and affirmed the conviction. Appellant now urges on rehearing that the resolution of his case hinges entirely on the interpretation of the theft statute (31.03, supra), which appears in the case of *Casey v. State*, 633 S.W.2d 885 (Tex.Cr.App.1982). Appellant accordingly argues that upon original submission this Court wrongly applied the *Casey* rationale to the facts of his case.

The evidence, reviewed in the light most favorable to the verdict, shows that the residence of Karen Bonham was burglarized on July 9, 1980. Taken in the burglary was a wedding ring set which included a wedding band and an engagement ring. The engagement ring contained a one-quarter karat diamond. Abilene police apprehended a juvenile in connection with the burglary. Discussions with the juvenile led police to the Goldsmith Shop, an Abilene jewelry store managed and co-owned by the appellant. A review of the store's check stubs revealed that appellant had written a $23.00 check on July 11, 1980, for the purchase of "scrap metal." However, the stub did not indicate to whom the check had been written or for what specific items the money was paid. Abilene police instructed Bonham to go the Goldsmith Shop and determine if she could identify any of the missing jewelry.

On July 17, 1980, Bonham went to the Goldsmith Shop and asked appellant if he had any rings which matched the description of her rings. At first appellant insisted that he had no such rings. However, after much persuasion by Bonham, he allowed her to look through a box of scrap metal that had been wrapped up to be sent to a smelter. Bonham found her rings in the box. However the one-quarter karat diamond had been removed from the engagement ring. Bonham testified at trial that when she asked appellant to return her diamond, he took her name, address and phone number and said he would contact her later. The next day, on July 18, 1980, appellant phoned Bonham and in-

formed her she could pick up the rings. She immediately proceeded to appellant's store where he gave her a Ziploc bag containing the rings and a stone wrapped in Scotch tape. In addition appellant charged Bonham $75.00. Bonham testified that appellant represented to her that the stone he gave her was the diamond originally mounted in her engagement ring. Later when Bonham took the rings and stone to another Abilene jeweler to have the stone mounted, she was informed that the stone given to her by appellant was not a diamond but was in fact a cubic zirconium.

At trial, appellant testified that he did not remember how he obtained appellant's rings however he did remember that the engagement ring did not have a diamond in it when he first saw the ring. He specifically denied ever removing the diamond from the mounting on the ring. Appellant related that when Bonham discovered her rings in the box of scrap metal, she asked him if he had a stone that would fit in the mounting and he sold her the cubic zirconium. The $75.00 charge was for the cubic zirconium.

In rebuttal, the State produced Cindy Mahoney, a former employee of appellant's. Mahoney testified that she was working in the store on July 11, 1980, when two juveniles walked into the store and sold appellant the wedding ring set and a silver bell for a total of $25.00. Mahoney testified that she saw the engagement ring on that date and it did have a one quarter karat diamond in the mounting.

In a two count indictment, appellant was charged with the offense of theft. The first count alleged the theft occurred on July 11, 1980, the day appellant purchased the rings from the juveniles. The second count, the sole count on which the jury was charged, alleged that the theft occurred on the day appellant substituted the cubic zirconium for the diamond. The indictment reads in pertinent part that:

"on or about the 18th day of July, 1980, ... John Berg did then and there unlaw-

fully, knowingly and intentionally appropriate property to-wit: a diamond of the value of over $200.00 and under $10,-000.00 from Karen W. Bonham, the owner thereof, without the effective consent of the said owner and with intent to deprive the said owner of said property, ..."

The indictment alleged theft under Section 31.03(a) and (b)(1), supra.

In his petition for discretionary review to this Court appellant argued that conviction under Section 31.03(a) and (b)(1) could not stand because there was no evidence to show that he participated in the initial appropriation of the diamond from Bonham (the burglary of Bonham's home). Appellant relied on *Casey*. This Court distinguished the instant case from *Casey* in that Casey was tried for theft based on the transfer of stolen property to him (V.T.C.A. Penal Code, Section 31.03(b)(2)) while appellant was tried for theft based on his appropriation of the diamond *after* it was in his possession. The Court emphasized that appellant was not indicted for theft by receiving stolen property, but rather for switching the diamond with the cubic zirconium after he talked to Bonham.

In his motion for rehearing, appellant contends that the sequence of events from July 11 to July 18 cannot not be broken up into two separate offenses. He asserts that if there was an offense committed it was one continuous theft beginning on July 11, 1980. Thus, under *Casey*, appellant's participation in the original unlawful appropriation must be shown in order for the evidence to be deemed sufficient. He urges us to properly apply *Casey* and reverse his conviction for insufficient evidence.

While we do not find appellant's reasoning persuasive, the issue is, in any event, now largely moot. This Court has expressly overruled the *Casey* decision by our recent holding in *McClain v. State*, 687 S.W. 2d 350 (Tex.Cr.App.1985).[1] As we stated in *McClain:*

---

1. *McClain* has had a lengthy history in our State courts. After our decision in *McClain* cited above, the case was remanded to the Court of

Appeals in order for that court to make the determination whether the evidence established beyond a reasonable doubt that both McClain's

"In sum, neither the rationale nor holding of *Casey* is supported by logic or legal authority; in fact, *Casey* flies in the face of the Legislature's express purpose in consolidating theft offenses. It attempts to reduce the offense of theft to 'two separate and distinct ways in which the offense could be committed' which, with deference, is much too simplistic; there are myriad 'ways in which the offense could be committed.' But *Casey* attempted to elevate mere matters of proof to 'distinct elements' comprising 'two separate' offenses, then tacked on a new 'element of the offense' ('initial actual taking')...."

In deciding the *McClain* case, this Court determined that the *Casey* decision was predicated on a fundamental misconception concerning the nature of theft. The *Casey* decision placed a distorting focus on the method or manner of acquisition of stolen property in defining the elements of theft necessary for the State to plead and prove. In *McClain*, this Court decided that it is error to focus on the "manner of acquisition" of personal property in a theft case. Instead, we held that the manner by which one acquires the property which he steals is inconsequential. Rather, "the gravamen of theft is in depriving the true owner of the use, benefit, enjoyment or value of his property" without the owner's consent. *McClain v. State*, supra, at 353.

The *Casey* opinion was flawed in that it confused the elements constituting the offense of theft with evidentiary matters constituting proof of the commission of the offense. As we noted in *McClain*, this confusion with regard to theft was precisely what the Legislature had intended to correct and clarify by the enactment of the present penal code. *McClain v. State*, supra, at 355.

■ It is now clear that the State need only allege that the person charged (1) "unlawfully" appropriated personal property (2) with the intent to deprive the owner of the property. See V.T.C.A., Penal Code, Section 31.03. If the State alleges these elements, then they have alleged all that is necessary to establish that the accused has been charged with a crime and all that is necessary to give the accused notice of the crime of which he is accused. The State need not plead the manner of acquisition or the circumstances surrounding the offense. The manner of acquisition or circumstance surrounding the acquisition are merely evidentiary matters and there is no requirement that the State plead evidentiary matters. *Thomas v. State*, 621 S.W.2d 158 (Tex.Cr.App.1981); *McClain v. State*, supra.

The State need only prove the offense as stated in Section 31.03(a). To plead, as the State did in this case, the offense in terms of Section 31.03(b)(1) and (2) is to plead evidentiary matters which are surplusage and in point of fact give the accused more notice than is constitutionally required. *Thomas v. State*, supra.

■ Thus, it can be seen that whatever theory the State presents as to how the offense occurred is irrelevant. So long as the evidence is sufficient to prove that appellant unlawfully appropriated the property in question with the "intent to deprive the owner of the property" appellant's conviction must stand. It is immaterial whether the State's *theory* at trial and the evidence offered involve theft as it is described in Section 31.03(b)(1), or theft as it is described in Section 31.03(b)(2).

and Navarro's exercise of control of the affected property was without the owner's effective consent. In the Court of Appeals, *McClain* and *Navarro* argued that there was insufficient evidence to support their convictions because the only evidence before the trial court was their stipulations and the trial court did not sign the agreements to waive the appearance of witnesses and stipulate to the evidence. After the Court of Appeals rejected this argument and affirmed their convictions (*McClain and Navarro v. State*, 697 S.W.2d 807 (Tex.App.—Houston [1st] 1985)), both defendants filed petitions for discretionary review which we granted. This Court agreed with McClain and Navarro and held that because the consent to stipulate was not approved in writing by the trial court, the stipulations could not be considered as evidence. As a result, both McClain's and Navarro's cases were remanded to the trial court for new trials. *McClain and Navarro*, 730 S.W.2d 739 (Tex.Cr.App.1987).

In the case before us, we must conclude that the evidence presented at trial is sufficient to show that appellant unlawfully appropriated the property of the complaining witness with the intent to deprive the owner of it. *McClain v. State*, supra. See also Section 31.03(a), supra.

Appellant's motion for rehearing is denied and the conviction is affirmed.

TEAGUE, J., concurs in the result.

CLINTON, J., dissents.