In The


Court of Appeals


Sixth Appellate District of Texas at Texarkana



______________________________



No. 06-03-00010-CR


______________________________




ASIYA HOSAIN ASKARI, Appellant



V.



THE STATE OF TEXAS, Appellee




 


On Appeal from the 337th Judicial District Court


 Harris County, Texas


Trial Court No. 914951




 




Before Morriss, C.J., Ross and Carter, JJ.


Opinion by Chief Justice Morriss



O P I N I O N



 A jury found Asiya Hosain Askari guilty of violating Section 31.03 of the Texas Penal Code,
Texas' consolidated theft statute, by collecting Texas welfare benefits through deception. (1) See Tex.
Pen. Code Ann. § 31.03 (Vernon 2003). The State asserted at trial that Askari fraudulently claimed
her husband, who was earning several thousand dollars each month as a Houston car salesman, did
not live in her household, thereby enabling her to receive public assistance to which she was not
entitled. On appeal, she challenges the sufficiency of the evidence and claims the trial court erred
by denying her pretrial motion to quash the indictment.

I. Background

 Askari was a stay-at-home mother and student at Texas Southern University's College of
Pharmacy and Health Sciences. Her husband, Ali, worked to support the couple and their three
children. In February 2000, Ali stopped working as an independent cellular telephone salesman
because he was unable to earn a sufficient monthly income to support his family. In March and April
2000, Ali applied with the Texas Department of Human Services (TDHS) in Houston, Texas, to
receive welfare benefits for himself, Askari, and their children. At the application interview, Ali told
TDHS that he and Askari were unemployed. Based on Ali's application, as well as TDHS'
verification of Ali's and Askari's unemployment status, TDHS approved monthly awards of $426.00
in food stamps and $287.00 in Aid to Families with Dependent Children (AFDC) benefits. TDHS
also told Ali to contact TDHS within ten days if there was any change in the employment status of
any member of his household. The public assistance benefits continued until September 2000. 
During this period, the family also received Medicaid assistance. 

 Beginning in 1999 or 2000, Askari and Ali began having marital problems. According to
Askari, Ali moved out of the couple's home in either October or November 2000. (2) On October 16,
2000, when Askari applied with TDHS to continue the family's public assistance benefits, she told
TDHS that Ali no longer lived in the couple's home. Based on her application, TDHS authorized
continuation of benefits. 

 On October 25, 2000, Ali applied to work at Joe Myers Toyota in Houston; his application
listed the couple's address as his home and also gave two Houston-area telephone numbers. Joe
Myers Toyota hired Ali five days later. During the next fourteen months, Ali would earn over
$50,000.00 in car sales commissions. 

 Askari renewed her application for public assistance in April 2001 and again claimed Ali did
not live in her household. TDHS approved her renewal application and for the next seven months
awarded benefits. (3) In December 2001, neither Askari nor Ali applied for renewal of welfare
benefits. 

II. Legal Sufficiency

 A. Standard of Review

 In her first point of error, Askari contends the evidence is legally insufficient to support her
conviction for theft. When reviewing legal sufficiency of the evidence, we examine the evidence
in the light most favorable to the verdict to determine whether any rational trier of fact could have
found the essential elements of the offense to be proven beyond a reasonable doubt. Thomas v. State,
31 S.W.3d 422, 424 (Tex. App.-Fort Worth 2000, pet. ref'd). "This standard gives full play to the
responsibility of the trier of fact to resolve conflicts in the testimony, to weigh the evidence, and to
draw reasonable inferences from basic facts to ultimate facts." Id. (citing Jackson v. Virginia, 443
U.S. 307, 319 (1979)).

 A person commits the offense of theft if he or she "unlawfully appropriates property with
intent to deprive the owner of property." Tex. Pen. Code Ann. § 31.03(a). Appropriation is
unlawful   if   it   is   accomplished   without   the   owner's   effective   consent.   Tex.   Pen.   Code
Ann.  § 31.03(b). "Effective consent" includes consent by a person legally authorized to act for the
property owner. Tex. Pen. Code Ann. § 31.01(3) (Vernon 2003). Consent is not effective if it is
induced by deception. Tex. Pen. Code Ann. § 31.01(3)(A). "Deception" means: 

 (A) creating or confirming by words or conduct a false impression
of law or fact that is likely to affect the judgment of another in the
transaction, and that the actor does not believe to be true; [or]


 (B) failing to correct a false impression of law or fact that is likely
to affect the judgment of another in the transaction, that the actor previously
created or confirmed by words or conduct, and that the actor does not now
believe is true . . . .


Tex. Pen. Code Ann. § 31.01(1). 

 B. Analysis

 Askari was prosecuted for theft "by acquiring and otherwise exercising control over
property," namely food stamps, Medicaid, and AFDC benefits owned by the State of Texas. The
State theorized Askari committed theft of welfare benefits by telling TDHS that Ali did not live with
the family when in fact he did, knowing that, if TDHS knew Ali was counted as part of the
household, Askari and her family would be denied welfare assistance. (4) 

 Viewing the evidence in the light most favorable to the verdict, a rational juror could find
each element of the offense to have been proven beyond a reasonable doubt. Askari told TDHS Ali
was not part of the household from October 2000 through December 2001. Acting on these
statements, TDHS authorized Askari's receipt of welfare benefits. (5) Askari reapplied for benefits in
April 2001. Her application again did not list Ali as a member of the household. TDHS again
approved Askari's application and awarded benefits. The State's evidence indicated Askari received
welfare benefits totaling $10,222.44 for the period of November 2000 through December 2001. (6) 

 At trial, the prosecutor asked Kenneth Rudolff, a Houston police officer and Askari's
neighbor, whether Ali lived with Askari during the time she received public assistance:

[Prosecutor:] And we're talking about in 2000 and 2001; is that correct?


[Rudolff:] That's correct.


[Prosecutor:] Was [sic] the defendant and her husband living there at that
time?


[Rudolff:] Yes, they were.


 From this evidence, we believe a jury could conclude Ali lived in Askari's house during the
time she received welfare benefits and, had his income been reported to TDHS, Askari would not
have been entitled to receive public assistance. Accordingly, the evidence is legally sufficient to
support the jury's verdict that Askari obtained welfare benefits by deception.

III. Factual Sufficiency

 A. Standard of Review

 In her second point of error, Askari contends the evidence is factually insufficient to show
Ali lived at the couple's home during the time Askari received welfare benefits. When reviewing
factual sufficiency, we examine all the evidence in a neutral light and set aside the verdict only if it
is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust, or if
the proof of guilt is so obviously weak as to undermine confidence in the jury's verdict. Johnson
v. State, 23 S.W.3d 1, 7 (Tex. Crim. App. 2000). Our factual sufficiency review must also accord
appropriate deference to the jury's findings so as not to substitute our judgment for that of the jury. 
Clewis v. State, 922 S.W.2d 126, 135 (Tex. Crim. App. 1996); Barnum v. State, 97 S.W.3d 373, 378
(Tex. App.-Amarillo 2003, pet. ref'd).

 B. Analysis 

 As discussed above, Rudolff testified Ali lived in the household in 2000 and 2001. Rudolff,
however, admitted he could not say for certain whether Ali actually slept at the house between
October 2000 and mid-December 2001. Nonetheless, Rudolf did say he noticed no change in the
couple's behavior after Ali allegedly moved out: on several occasions he saw the couple riding in
the family automobiles together and observed the couple interacting with their children. He testified
this behavior was consistent with their behavior before October and November 2000.

 In contrast, Askari's and Ali's testimony disputed the State's claim that Ali was part of
Askari's household during the relevant time period. Askari repeatedly told the jury Ali did not move
out until the first part of November. (A November move-out date would coincide with the date Ali
began earning reportable income as a car salesman.) 

 Other evidence, however, contradicted Askari's testimony regarding Ali's date of departure. 
Her renewal application (dated October 16 and predating Ali's employment application with Joe
Myers Toyota) and TDHS records state Ali moved out on October 5. Thus, the documentary
evidence calls into question the veracity of a critical part of Askari's trial testimony. The jury, as the
arbiter of witness credibility, was entitled to disbelieve any of Askari's testimony that it found
incredible, including her claim that Ali was not part of the household from October or November
of 2000 until mid-December 2001.

 Ali told the jury he moved to his parents' home in Bryan, Texas, in November 2000. He
stated he was "100 percent" certain he did not leave the couple's household on October 5, as recorded
in TDHS documents. Ali also testified he worked six days a week from nine in the morning until
nine or ten each evening at Joe Myers Toyota. Thus, for Ali's testimony that he did not live in the
household to be credible, the jury would have had to conclude that Ali commuted approximately
ninety miles each way to work from November 2000 through March 2001, the date on which Ali
testified he moved into his brother's home in Houston. Also, of greater significance was a portion
of Ali's testimony on cross-examination:

[Prosecutor:] On the date that you applied to go to work for Joe Myers Toyota,
where were you living?


[Ali:] I was living at the house, sir.


[Prosecutor:] And that's what you put down as your address and your phone
number?


[Ali:] Yes, sir.


The address listed on Ali's employment application was the couple's home on Travelers Way in
Houston. Thus, Ali's testimony that he was part of the household on October 25, 2000, was
inconsistent with Askari's October 16, 2000, welfare application that stated he was not part of the
household. If the jury believed the contents of her welfare application recorded the proper date of
Ali's departure, then the jury would have had to disbelieve Ali's trial testimony. Conversely, if the
jury believed Ali's trial testimony, then it would have had to find Askari's welfare application to have
fraudulently stated Ali was no longer part of the household. Either way, this obvious conflict
certainly casts doubt on the credibility of Askari's defense.

 There were also several pieces of circumstantial evidence suggesting Ali was part of the
household and lived with Askari. From October 2000 through December 2001, Ali's driver's license
continued to list the couple's home on Travelers Way as his residence. The utilities to the couple's
home were never taken out of Ali's name. Ali submitted two applications for vehicle registration
between October 2000 and December 2001; both applications listed Ali's residence as the couple's
home on Travelers Way. Ali's letter to TDHS regarding his promise to pay the couple's mortgage
listed his address as the couple's home on Travelers Way. Rudolff testified he saw Ali and Askari
driving the same vehicles (for which Ali had obtained title) during the period at issue. Askari
admitted Ali retained a key to the house and visited often. Rudolff also testified he observed Askari
and Ali together at the couple's home during the relevant time period and, to him, the couple
appeared to be acting like a typical family. 

 We do not find the evidence against the jury's factual determination to greatly outweigh the
evidence supporting the jury's verdict. Nor is the direct and circumstantial evidence so obviously
weak as to undermine confidence in the jury's verdict. Accordingly, we find the evidence factually
sufficient to support the jury's verdict. 

IV. Motion To Quash the Indictment

 A. Standard of Review

 In her third point of error, Askari contends the trial court erred by overruling her motion to
quash the indictment. Askari asserts the indictment failed to, among other things, set forth how the
alleged appropriation was unlawful in that it did not state a "manner and means" of how the
defendant committed theft. We review a trial court's ruling on a motion to quash for abuse of
discretion. Thomas v. State, 621 S.W.2d 158, 164 (Tex. Crim. App. 1980); State v. York, 31 S.W.3d
798, 801 (Tex. App.-Dallas 2000, pet. ref'd). (7)

 

 B. Analysis

 In Berg v. State, 747 S.W.2d 800 (Tex. Crim. App. 1984), the Texas Court of Criminal
Appeals reviewed the sufficiency of the evidence supporting Berg's conviction for theft. The court
held:

It is now clear that the State need only allege that the person charged (1) "unlawfully"
appropriated personal property (2) with the intent to deprive the owner of the
property. See V.T.C.A., Penal Code, Section 31.03. If the State alleges these
elements, then they have alleged all that is necessary to establish that the accused has
been charged with a crime and all that is necessary to give the accused notice of the
crime of which he is accused. The State need not plead the manner of acquisition or
the circumstances surrounding the offense. The manner of acquisition or
circumstance surrounding the acquisition are merely evidentiary matters and there is
no requirement that the State plead evidentiary matters.


Id. at 809 (citing Thomas v. State, 621 S.W.2d 158 (Tex. Crim. App. 1981)); McClain v. State, 687
S.W.2d 350, 355 (Tex. Crim. App. 1985).

 Since Berg, many intermediate courts of appeals have reached a different conclusion. In
Smith v. State, 761 S.W.2d 546, 548 (Tex. App.-Corpus Christi 1988, no pet.) (citing Gorman v.
State, 634 S.W.2d 681 (Tex. Crim. App. 1982)), the Thirteenth Court of Appeals held that a
defendant charged with theft may require the State to specify the manner in which the defendant
allegedly appropriated the property. 

 In Green v. State, 767 S.W.2d 919, 921 (Tex. App.-Beaumont 1989, pet. ref'd), the Ninth
Court of Appeals held the trial court erred by denying the defendant's motion to quash the theft
indictment because the indictment did not allege the manner in which the property was allegedly
unlawfully appropriated. The Green court found, however, that such a failure did not impact Green's
ability to prepare a defense because the evidence at trial showed Green "was aware of the existence
and importance of the state's case." Id. at 922. The Green court then held the indictment's failure
to allege the manner of the unlawful appropriation did not prejudice Green's substantial rights. 

 In Noel v. State, 769 S.W.2d 366, 368 (Tex. App.-San Antonio 1989, no pet.), the Fourth
Court of Appeals held that a defendant, on the filing and presentment of a motion to quash, is
entitled to have the theft indictment specify the manner in which the State intends to show the
defendant allegedly appropriated the property. The Noel court held the trial court erred by denying
Noel's motion to quash the indictment, but further held the error harmless because the record did not
indicate that the indictment's lack of specificity effected Noel's ability to prepare a defense. Id. at
368-69. The Noel court also distinguished the Texas Court of Criminal Appeals' holding in Berg on
the basis that Berg addressed evidentiary sufficiency rather than reviewed a motion to quash.

 In the case now before this Court, the indictment alleged Askari, on or about November 1,
2000, and continuing through December 1, 2001, did:

unlawfully . . . appropriate, by acquiring and otherwise exercising control over
property, namely, FOOD STAMP BENEFITS, MEDICAID AND AID TO
FAMILIES WITH DEPENDENT CHILDREN BENEFITS AKA
TEMPORARY ASSISTANCE TO NEEDY FAMILY BENEFITS, owned by the
State of Texas, hereinafter the Complainant, with the intent to deprive the
Complainant of the property and the total value of the property appropriated was over
$1,500.00 dollars and under $20,000.00 dollars.


The indictment does not allege the manner in which Askari allegedly unlawfully appropriated
welfare benefits. Askari filed a motion to quash, thus triggering the State's duty to further specify
the manner of the alleged unlawful appropriation. See id. at 368; Green, 767 S.W.2d at 921; Smith,
761 S.W.2d at 548. The trial court erred by denying Askari's motion to quash. We must now decide
whether such error was harmful.

 On appeal, Askari contends "the State's theory is simply not apparent from the face of the
'elastic' pleading; moreover, the defense hotly contested the State's accusation of unlawful
appropriation." First, in her opening statement before the presentation of the State's case at trial,
Askari's counsel told the jury he expected the evidence to show Ali moved out of the couple's
household during the time in which Askari received benefits and, for cultural reasons, the couple did
not share the existence of marital discord with their extended families. Counsel's argument makes
it clear Askari was aware the State intended to prove the manner of unlawful appropriation was by
making a false statement to TDHS regarding Ali's residency in the household. Second, Askari's
concession on appeal that the defense "hotly contested" the State's accusation of unlawful
appropriation supports our conclusion that the indictment's failure to allege the manner of illegal
appropriation had no detrimental impact on Askari's ability to present a defense. We find Askari has
failed to show the trial court's failure to quash the indictment created reversible error. 



V. Conclusion

 Having been shown no reversible error, we affirm the trial court's judgment.


 Josh R. Morriss, III,

 Chief Justice


Date Submitted: August 29, 2003

Date Decided: September 12, 2003


Publish
1. The trial court sentenced Askari to two years' confinement in a state jail facility and a
$1,000.00 fine. The trial court probated the confinement for a period of two years and ordered
Askari to pay $9,119.66 in restitution to the Texas Department of Human Services.
2. Askari told employees at TDHS that Ali moved out of the home on October 5, 2000. Askari
testified at trial Ali did not move out of the house until November. 
3. TDHS reduced Askari's award by $78.00 during the last six months because she had not
assisted the Texas Attorney General in seeking child support payments from Ali.
4. Had Askari claimed Ali was living in the couple's home, TDHS' routine screening for
income of all household members might have discovered Ali's employment at Joe Myers Toyota,
and his income would have counted against the family's benefit eligibility. Given Ali's employment
income, we doubt Askari would have qualified for assistance if TDHS counted Ali as part of the
household.
5. Though authorized at the conclusion of her November 3, 2000, interview with TDHS, the
State paid retroactive benefits to Askari beginning on October 16, 2000, the date of her application. 
TDHS authorized renewal of these payments in April 2001 for the period of April through December
of 2001. 
6. Other evidence suggested Askari received $5,119.66 in Medicaid benefits, $2,021.00 in food
stamps, and $1,979.00 in AFDC from November 2000 through December 2001, for a total of
$9,119.66. Either total is within the statutory range for the crime charged in this case. See Tex. Pen.
Code Ann. § 31.03(e)(4) (Vernon 2003).
7. In their respective briefs to this Court, both Askari and the State failed to address the proper
standard of review for examining a trial court's denial of a motion to quash.