Asiya Hosain ASKARI, Appellant,

v.

The STATE of Texas, Appellee.

No. 06–03–00010–CR.

Court of Appeals of Texas,
Texarkana.

Submitted Aug. 29, 2003.

Decided Sept. 12, 2003.

Rehearing Overruled Nov. 25, 2003.

Shirley Cornelius, for State of Texas.

Before MORRISS, C.J., ROSS and CARTER, JJ.

OPINION

Opinion by Chief Justice MORRISS.

A jury found Asiya Hosain Askari guilty of violating Section 31.03 of the Texas Penal Code, Texas' consolidated theft statute, by collecting Texas welfare benefits through deception.[1] *See* TEX. PEN.CODE ANN. § 31.03 (Vernon 2003). The State asserted at trial that Askari fraudulently claimed her husband, who was earning several thousand dollars each month as a Houston car salesman, did not live in her household, thereby enabling her to receive public assistance to which she was not entitled. On appeal, she challenges the sufficiency of the evidence and claims the trial court erred by denying her pretrial motion to quash the indictment.

## I. Background

Askari was a stay-at-home mother and student at Texas Southern University's College of Pharmacy and Health Sciences. Her husband, Ali, worked to support the couple and their three children. In February 2000, Ali stopped working as an independent cellular telephone salesman because he was unable to earn a sufficient monthly income to support his family. In March and April 2000, Ali applied with the Texas Department of Human Services (TDHS) in Houston, Texas, to receive welfare benefits for himself, Askari, and their children. At the application interview, Ali told TDHS that he and Askari were unemployed. Based on Ali's application, as well

George McCall Secrest, Jr., Bennett and Secrest, LLP, Houston, for appellant.

Shirley Cornelius, Asst. Dist. Atty., William J. Delmore, III, Asst. D.A., Appellate Div., Houston, for appellee.

1. The trial court sentenced Askari to two years' confinement in a state jail facility and a $1,000.00 fine. The trial court probated the confinement for a period of two years and ordered Askari to pay $9,119.66 in restitution to the Texas Department of Human Services.

as TDHS' verification of Ali's and Askari's unemployment status, TDHS approved monthly awards of $426.00 in food stamps and $287.00 in Aid to Families with Dependent Children (AFDC) benefits. TDHS also told Ali to contact TDHS within ten days if there was any change in the employment status of any member of his household. The public assistance benefits continued until September 2000. During this period, the family also received Medicaid assistance.

Beginning in 1999 or 2000, Askari and Ali began having marital problems. According to Askari, Ali moved out of the couple's home in either October or November 2000.[2] On October 16, 2000, when Askari applied with TDHS to continue the family's public assistance benefits, she told TDHS that Ali no longer lived in the couple's home. Based on her application, TDHS authorized continuation of benefits.

On October 25, 2000, Ali applied to work at Joe Myers Toyota in Houston; his application listed the couple's address as his home and also gave two Houston-area telephone numbers. Joe Myers Toyota hired Ali five days later. During the next fourteen months, Ali would earn over $50,000.00 in car sales commissions.

Askari renewed her application for public assistance in April 2001 and again claimed Ali did not live in her household. TDHS approved her renewal application and for the next seven months awarded benefits.[3] In December 2001, neither Askari nor Ali applied for renewal of welfare benefits.

## II. Legal Sufficiency

### A. Standard of Review

■■■■ In her first point of error, Askari contends the evidence is legally insufficient to support her conviction for theft. When reviewing legal sufficiency of the evidence, we examine the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could have found the essential elements of the offense to be proven beyond a reasonable doubt. *Thomas v. State*, 31 S.W.3d 422, 424 (Tex.App.-Fort Worth 2000, pet. ref'd). "This standard gives full play to the responsibility of the trier of fact to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Id.* (citing *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979)).

A person commits the offense of theft if he or she "unlawfully appropriates property with intent to deprive the owner of property." Tex. Pen.Code Ann. § 31.03(a). Appropriation is unlawful if it is accomplished without the owner's effective consent. Tex. Pen.Code Ann. § 31.03(b). "Effective consent" includes consent by a person legally authorized to act for the property owner. Tex. Pen.Code Ann. § 31.01(3) (Vernon 2003). Consent is not effective if it is induced by deception. Tex. Pen.Code Ann. § 31.01(3)(A). "Deception" means:

(A) creating or confirming by words or conduct a false impression of law or fact that is likely to affect the judgment of another in the transaction, and that the actor does not believe to be true; [or]

(B) failing to correct a false impression of law or fact that is likely to affect

---

**2.** Askari told employees at TDHS that Ali moved out of the home on October 5, 2000. Askari testified at trial Ali did not move out of the house until November.

**3.** TDHS reduced Askari's award by $78.00 during the last six months because she had not assisted the Texas Attorney General in seeking child support payments from Ali.

the judgment of another in the transaction, that the actor previously created or confirmed by words or conduct, and that the actor does not now believe is true. . . .

Tex. Pen.Code Ann. § 31.01(1).

### B. Analysis

■ Askari was prosecuted for theft "by acquiring and otherwise exercising control over property," namely food stamps, Medicaid, and AFDC benefits owned by the State of Texas. The State theorized Askari committed theft of welfare benefits by telling TDHS that Ali did not live with the family when in fact he did, knowing that, if TDHS knew Ali was counted as part of the household, Askari and her family would be denied welfare assistance.[4]

Viewing the evidence in the light most favorable to the verdict, a rational juror could find each element of the offense to have been proven beyond a reasonable doubt. Askari told TDHS Ali was not part of the household from October 2000 through December 2001. Acting on these statements, TDHS authorized Askari's receipt of welfare benefits.[5] Askari reapplied for benefits in April 2001. Her application again did not list Ali as a member of the household. TDHS again approved Askari's application and awarded benefits. The State's evidence indicated Askari received welfare benefits totaling $10,222.44

for the period of November 2000 through December 2001.[6]

At trial, the prosecutor asked Kenneth Rudolff, a Houston police officer and Askari's neighbor, whether Ali lived with Askari during the time she received public assistance:

[Prosecutor:] And we're talking about in 2000 and 2001; is that correct?

[Rudolff:] That's correct.

[Prosecutor:] Was [sic] the defendant and her husband living there at that time?

[Rudolff:] Yes, they were.

From this evidence, we believe a jury could conclude Ali lived in Askari's house during the time she received welfare benefits and, had his income been reported to TDHS, Askari would not have been entitled to receive public assistance. Accordingly, the evidence is legally sufficient to support the jury's verdict that Askari obtained welfare benefits by deception.

## III. Factual Sufficiency

### A. Standard of Review

■■ In her second point of error, Askari contends the evidence is factually insufficient to show Ali lived at the couple's home during the time Askari received welfare benefits. When reviewing factual sufficiency, we examine all the evidence in a neutral light and set aside the verdict only

---

4. Had Askari claimed Ali was living in the couple's home, TDHS' routine screening for income of all household members might have discovered Ali's employment at Joe Myers Toyota, and his income would have counted against the family's benefit eligibility. Given Ali's employment income, we doubt Askari would have qualified for assistance if TDHS counted Ali as part of the household.

5. Though authorized at the conclusion of her November 3, 2000, interview with TDHS, the State paid retroactive benefits to Askari beginning on October 16, 2000, the date of her

application. TDHS authorized renewal of these payments in April 2001 for the period of April through December of 2001.

6. Other evidence suggested Askari received $5,119.66 in Medicaid benefits, $2,021.00 in food stamps, and $1,979.00 in AFDC from November 2000 through December 2001, for a total of $9,119.66. Either total is within the statutory range for the crime charged in this case. See Tex. Pen.Code Ann. § 31.03(e)(4) (Vernon 2003).

if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust, or if the proof of guilt is so obviously weak as to undermine confidence in the jury's verdict. *Johnson v. State,* 23 S.W.3d 1, 7 (Tex.Crim.App.2000). Our factual sufficiency review must also accord appropriate deference to the jury's findings so as not to substitute our judgment for that of the jury. *Clewis v. State,* 922 S.W.2d 126, 135 (Tex.Crim.App.1996); *Barnum v. State,* 97 S.W.3d 373, 378 (Tex. App.-Amarillo 2003, pet. ref'd).

## B. Analysis

■ As discussed above, Rudolff testified Ali lived in the household in 2000 and 2001. Rudolff, however, admitted he could not say for certain whether Ali actually slept at the house between October 2000 and mid-December 2001. Nonetheless, Rudolff did say he noticed no change in the couple's behavior after Ali allegedly moved out: on several occasions he saw the couple riding in the family automobiles together and observed the couple interacting with their children. He testified this behavior was consistent with their behavior before October and November 2000.

In contrast, Askari's and Ali's testimony disputed the State's claim that Ali was part of Askari's household during the relevant time period. Askari repeatedly told the jury Ali did not move out until the first part of November. (A November move-out date would coincide with the date Ali began earning reportable income as a car salesman.)

Other evidence, however, contradicted Askari's testimony regarding Ali's date of departure. Her renewal application (dated October 16 and predating Ali's employment application with Joe Myers Toyota) and TDHS records state Ali moved out on October 5. Thus, the documentary evidence calls into question the veracity of a critical part of Askari's trial testimony.

The jury, as the arbiter of witness credibility, was entitled to disbelieve any of Askari's testimony that it found incredible, including her claim that Ali was not part of the household from October or November of 2000 until mid-December 2001.

Ali told the jury he moved to his parents' home in Bryan, Texas, in November 2000. He stated he was "100 percent" certain he did not leave the couple's household on October 5, as recorded in TDHS documents. Ali also testified he worked six days a week from nine in the morning until nine or ten each evening at Joe Myers Toyota. Thus, for Ali's testimony that he did not live in the household to be credible, the jury would have had to conclude that Ali commuted approximately ninety miles each way to work from November 2000 through March 2001, the date on which Ali testified he moved into his brother's home in Houston. Also, of greater significance was a portion of Ali's testimony on cross-examination:

> [Prosecutor:] On the date that you applied to go to work for Joe Myers Toyota, where were you living?
>
> [Ali:] I was living at the house, sir.
>
> [Prosecutor:] And that's what you put down as your address and your phone number?
>
> [Ali:] Yes, sir.

The address listed on Ali's employment application was the couple's home on Travelers Way in Houston. Thus, Ali's testimony that he was part of the household on October 25, 2000, was inconsistent with Askari's October 16, 2000, welfare application that stated he was not part of the household. If the jury believed the contents of her welfare application recorded the proper date of Ali's departure, then the jury would have had to disbelieve Ali's trial testimony. Conversely, if the jury believed Ali's trial testimony, then it would

have had to find Askari's welfare application to have fraudulently stated Ali was no longer part of the household. Either way, this obvious conflict certainly casts doubt on the credibility of Askari's defense.

There were also several pieces of circumstantial evidence suggesting Ali was part of the household and lived with Askari. From October 2000 through December 2001, Ali's driver's license continued to list the couple's home on Travelers Way as his residence. The utilities to the couple's home were never taken out of Ali's name. Ali submitted two applications for vehicle registration between October 2000 and December 2001; both applications listed Ali's residence as the couple's home on Travelers Way. Ali's letter to TDHS regarding his promise to pay the couple's mortgage listed his address as the couple's home on Travelers Way. Rudolff testified he saw Ali and Askari driving the same vehicles (for which Ali had obtained title) during the period at issue. Askari admitted Ali retained a key to the house and visited often. Rudolff also testified he observed Askari and Ali together at the couple's home during the relevant time period and, to him, the couple appeared to be acting like a typical family.

We do not find the evidence against the jury's factual determination to greatly outweigh the evidence supporting the jury's verdict. Nor is the direct and circumstantial evidence so obviously weak as to undermine confidence in the jury's verdict. Accordingly, we find the evidence factually sufficient to support the jury's verdict.

## IV. Motion To Quash the Indictment

### A. Standard of Review

■ In her third point of error, Askari contends the trial court erred by overruling her motion to quash the indictment. Askari asserts the indictment failed to, among other things, set forth how the alleged appropriation was unlawful in that it did not state a "manner and means" of how the defendant committed theft. We review a trial court's ruling on a motion to quash for abuse of discretion. *Thomas v. State,* 621 S.W.2d 158, 164 (Tex.Crim.App. 1980); *State v. York,* 31 S.W.3d 798, 801 (Tex.App.-Dallas 2000, pet. ref'd).[7]

### B. Analysis

In *Berg v. State,* 747 S.W.2d 800 (Tex. Crim.App.1984), the Texas Court of Criminal Appeals reviewed the sufficiency of the evidence supporting Berg's conviction for theft. The court held:

It is now clear that the State need only allege that the person charged (1) "unlawfully" appropriated personal property (2) with the intent to deprive the owner of the property. *See* V.T.C.A., Penal Code, Section 31.03. If the State alleges these elements, then they have alleged all that is necessary to establish that the accused has been charged with a crime and all that is necessary to give the accused notice of the crime of which he is accused. The State need not plead the manner of acquisition or the circumstances surrounding the offense. The manner of acquisition or circumstance surrounding the acquisition are merely evidentiary matters and there is no requirement that the State plead evidentiary matters.

*Id.* at 809 (citing *Thomas v. State,* 621 S.W.2d 158 (Tex.Crim.App.1981)); *McClain v. State,* 687 S.W.2d 350, 355 (Tex.Crim.App.1985).

Since *Berg,* many intermediate courts of appeals have reached a different conclusion. In *Smith v. State,* 761 S.W.2d 546,

---

7. In their respective briefs to this Court, both Askari and the State failed to address the proper standard of review for examining a trial court's denial of a motion to quash.

548 (Tex.App.-Corpus Christi 1988, no pet.) (citing *Gorman v. State,* 634 S.W.2d 681 (Tex.Crim.App.1982)), the Thirteenth Court of Appeals held that a defendant charged with theft may require the State to specify the manner in which the defendant allegedly appropriated the property.

In *Green v. State,* 767 S.W.2d 919, 921 (Tex.App.-Beaumont 1989, pet. ref'd), the Ninth Court of Appeals held the trial court erred by denying the defendant's motion to quash the theft indictment because the indictment did not allege the manner in which the property was allegedly unlawfully appropriated. The *Green* court found, however, that such a failure did not impact Green's ability to prepare a defense because the evidence at trial showed Green "was aware of the existence and importance of the state's case." *Id.* at 922. The *Green* court then held the indictment's failure to allege the manner of the unlawful appropriation did not prejudice Green's substantial rights.

In *Noel v. State,* 769 S.W.2d 366, 368 (Tex.App.-San Antonio 1989, no pet.), the Fourth Court of Appeals held that a defendant, on the filing and presentment of a motion to quash, is entitled to have the theft indictment specify the manner in which the State intends to show the defendant allegedly appropriated the property. The *Noel* court held the trial court erred by denying Noel's motion to quash the indictment, but further held the error harmless because the record did not indicate that the indictment's lack of specificity effected Noel's ability to prepare a defense. *Id.* at 368–69. The *Noel* court also distinguished the Texas Court of Criminal Appeals' holding in *Berg* on the basis that *Berg* addressed evidentiary sufficiency rather than reviewed a motion to quash.

■ In the case now before this Court, the indictment alleged Askari, on or about November 1, 2000, and continuing through December 1, 2001, did:

> unlawfully ... appropriate, by acquiring and otherwise exercising control over property, namely, **FOOD STAMP BENEFITS, MEDICAID AND AID TO FAMILIES WITH DEPENDENT CHILDREN BENEFITS AKA TEMPORARY ASSISTANCE TO NEEDY FAMILY BENEFITS,** owned by the State of Texas, hereinafter the Complainant, with the intent to deprive the Complainant of the property and the total value of the property appropriated was over $1,500.00 dollars and under $20,000.00 dollars.

The indictment does not allege the manner in which Askari allegedly unlawfully appropriated welfare benefits. Askari filed a motion to quash, thus triggering the State's duty to further specify the manner of the alleged unlawful appropriation. *See id.* at 368; *Green,* 767 S.W.2d at 921; *Smith,* 761 S.W.2d at 548. The trial court erred by denying Askari's motion to quash. We must now decide whether such error was harmful.

■ On appeal, Askari contends "the State's theory is simply not apparent from the face of the 'elastic' pleading; moreover, the defense hotly contested the State's accusation of unlawful appropriation." First, in her opening statement before the presentation of the State's case at trial, Askari's counsel told the jury he expected the evidence to show Ali moved out of the couple's household during the time in which Askari received benefits and, for cultural reasons, the couple did not share the existence of marital discord with their extended families. Counsel's argument makes it clear Askari was aware the State intended to prove the manner of unlawful appropriation was by making a false statement to TDHS regarding Ali's residency in the household. Second, Aska-

ri's concession on appeal that the defense "hotly contested" the State's accusation of unlawful appropriation supports our conclusion that the indictment's failure to allege the manner of illegal appropriation had no detrimental impact on Askari's ability to present a defense. We find Askari has failed to show the trial court's failure to quash the indictment created reversible error.

## V. Conclusion

Having been shown no reversible error, we affirm the trial court's judgment.