James Elmer COLSON, Appellant.

v.

The STATE of Texas, Appellee.

No. 07–92–0004–CR.

Court of Appeals of Texas,
Amarillo.

Feb. 18, 1993.

Rehearing Overruled March 2, 1993.

Discretionary Review Refused
June 30, 1993.

Wischkaemper & Martinez, Bill Wischkaemper, Lubbock, for appellant.

Travis Ware, Crim. Dist. Atty., Michael West, Lubbock, for appellee.

Before REYNOLDS, C.J., and DODSON and POFF, JJ.

REYNOLDS, Chief Justice.

After a jury found appellant James Elmer Colson guilty of the offense of theft of property of the value of $750 or more but less than $20,000, the trial court assessed his punishment at confinement for 10 years, probated. With seven points of error, appellant attacks the sufficiency of the indictment, the court's charge, and the evidence, as well as an evidentiary ruling of the court and the constitutionality of the penal statute upon which the prosecution was based. We will overrule the points of error and affirm.

Appellant's points are more clearly understood by their association with the evidence. The evidence reveals that Lubbock Police Corporal Roy Green had known Kaye Leatherwood,[1] an informant, for about three years, and she had assisted him some five to eight times in police undercover operations. He had arrested her for, and at the time of trial she was serving a probationary term for conviction of, passing forged checks.

Through the Crime Line, Leatherwood informed Green she had heard that appellant was a "fence." Acting on the information, the police outfitted Leatherwood with a hidden microphone and transmitter, and furnished her with two pistols and two Zenith camcorders, each valued at $1,195. The camcorders were loaned to Green by Ken Davis, manager of Radio Lab.

---

1. Leatherwood's christian name is shown as Kaye in the indictment and as Kay in the statement of facts, but the correct spelling has not been placed in issue.

Leatherwood went to Bill's Bees, a business operated by appellant, where there were three meetings, which were tape recorded by Green. At the second meeting, Leatherwood showed appellant the camcorders, which were in their original boxes, and the pistols; at the third meeting, she explicitly represented to appellant or told him that the property was stolen. She told him the property had come from California, not from Texas, and that he need not worry because it was "okay" here.

Later, in the afternoon and at appellant's request, Leatherwood met him at a restaurant. Then, at appellant's direction, they drove their respective vehicles a distance of two blocks, where Leatherwood transferred the property to appellant and received from him $300 cash. Afterwards, she gave the money to Green.

Appellant placed the property in his vehicle and transported it to his home. Subsequently, after he was given the *Miranda* warnings,[2] appellant signed a written consent to search and led the officers to the property in his home. The camcorders were returned to Ken Davis, the owner.

During his direct testimony, appellant readily conceded that he bought the pistols and camcorders knowing that they were stolen. He explained he did so to recover property in general since he had lost property from break-ins at his business and the police would not do anything about it, and because Leatherwood said she needed the money to care for her child. On cross-examination, appellant first stated he did not know whether he was going to keep the property or sell it; but, when pressed, he said his wife would have made him give it back, and he would have called a member of the sheriff's office, but "they got me before my head cleared up."

By the material parts of its indictment, the State alleged that appellant did

intentionally appropriate, by acquiring and otherwise exercising control over

property, to-wit: two (2) camcorders, of the value of $750 or more, but less than $20,000, which was then and there in the custody of Kaye Leatherwood, an agent of Roy Green, a law enforcement agent, after the said Kaye Leatherwood had explicitly represented to the said JAMES ELMER COLS [sic] that the said property was stolen, and the said JAMES ELMER COLSON appropriated said property believing it was stolen by another, and with the intent to deprive the owner, KEN DAVIS, of the property.

The indictment was premised upon that part of the penal statute denouncing theft, which provides that:

(a) A person commits an offense if he unlawfully appropriates property with intent to deprive the owner of property.

(b) Appropriation of property is unlawful if:

\* \* \* \* \* \*

(3) property in the custody of any law enforcement agency was explicitly represented by any law enforcement agent to the actor as being stolen and the actor appropriates the property believing it was stolen by another.

Tex. Penal Code Ann. § 31.03(a)–(b)(3) (Vernon 1989).[3]

Pretrial, appellant moved to quash the indictment on four grounds, two of which were for the failure to "allege that the acts contained in the indictment were illegal or unlawful," and to "allege the manner and means [the State] intends to use to show which of the negatives listed as vitiating consent in 31.01(4) Tex. Penal Code Ann. the [S]tate is relying on to negate consent."[4] When appellant's counsel presented the motion, he said, "And it will stand on its own. I do not need to argue it."

▮ The motion was overruled, prompting appellant's first two points of error. By these points, which appellant groups for

**2.** *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

**3.** Subsequent citations of sections refer to those sections of the Texas Penal Code Annotated (Vernon 1989).

**4.** The cited statute provides that consent is not effective if it is "given solely to detect the commission of an offense." Tex. Penal Code Ann. § 31.01(4)(D) (Vernon 1989).

presentation, he charges the court with error in not quashing the indictment because (1) it neither alleges that the property was appropriated "unlawfully" nor facts necessary to the same conclusion, and (2) it does not allege which of the statutory negatives vitiates consent.

The essence of appellant's quashal motion, albeit not stated therein, was that the indictment was deficient in the notice of the nature of the charge against him. Obviously, his first-point complaint arises because the State did not adhere to the accepted practice of following the statute to allege that he "unlawfully" appropriated the property. Nevertheless, within the indictment are allegations charging, in brief, that property in the custody of a law enforcement agency was explicitly represented by a law enforcement agent to appellant as being stolen and he appropriated the property believing it was stolen by another. The meaning of the allegations is, by definition, that the appropriation was unlawful. Sec. 31.03(b)(3). Thus, the indictment imparted sufficient notice to appellant that the appropriation alleged was unlawful. The sufficiency of notice actually ends our inquiry, *Adams v. State*, 707 S.W.2d 900, 903 (Tex.Cr.App.1986); yet, we observe that because appellant did not explain to the trial court, nor offers a reason on appeal, why the absence of "unlawful" from the indictment impacted his defense, it cannot be said that the claimed notice deficiency prejudiced his substantial rights. *Id.* at 904. Appellant's first point of error is overruled.

▮ In pursuing his second contention, appellant interprets section 31.03 as evidencing the Legislature's intent that an appropriation under section 31.03(b)(3) be without the owner's effective consent to constitute a crime. He reasons his interpretation is in harmony with section 31.-01(4)(D), which provides that consent is not effective if given solely to detect the commission of an offense. Therefore, since the indictment does not allege his appropriation was "without the owner's effective consent," he concludes that his quashal motion should have been granted for lack of no-

tice. Neither appellant's interpretation nor his conclusion comports with current law.

▮ The State's allegation of appellant's appropriation did not involve a taking based upon an act negating consent; thus, under the current theft statute, "the State need only allege that the person (1) unlawfully appropriated property (2) with the intent to deprive the owner of the property. Failure to allege that the property was appropriated without the owner's effective consent does not render the indictment fundamentally defective." *Ex parte Luna*, 784 S.W.2d 369, 371 (Tex.Cr.App.1990). The State's indictment contained the allegations required by the statute, which was all that was necessary to give appellant notice of the crime of which he was accused. *Berg v. State*, 747 S.W.2d 800, 809 (Tex.Cr.App.1984). His second point of error is overruled.

▮ With his third point, appellant contends the evidence is insufficient to prove he appropriated the property without the owner's effective consent. This results, he argues, because while the owner, Ken Davis, was giving his testimony, he did not testify that he gave his consent for the camcorders to be used solely to detect the commission of an offense, or that his (appellant's) appropriation of them was without his (Davis') effective consent. We do not agree with appellant's contention.

In charging appellant's appropriation of the property was with the intent to deprive the owner of the property, the State did not allege the appropriation was unlawful because it was without the owner's effective consent; instead, the State alleged his appropriation was unlawful because the property, in the custody of the law enforcement agency, was explicitly represented by the agency's agent to appellant as being stolen, and he appropriated it believing it was stolen by another. Then, under the indictment, the State did not have to prove that the law enforcement agency obtained custody of the property without the owner's effective consent; rather, to sustain the conviction, the State's proof had to establish that appellant unlawfully appropriated the property with the "intent to deprive the

owner of the property." *Id.* at 809. Parenthetically, we observe that the jury was not required to accept appellant's testimony that, as explicated in his brief, he bought the property with the intention of finding its source, and he would have called the sheriff's office concerning what he should do with it, but was arrested before he could carry out his plans. *Bryant v. State*, 397 S.W.2d 445, 448 (Tex.Cr.App. 1965). Appellant's third point of error is overruled.

In making his oral objections to the charge, appellant also stated, with punctuation as shown in the record, the following:

> Therefore, I would request a charge: "In this case there is evidence that the—" well, "before you may convict the defendant you must believe beyond a reasonable doubt that he intentionally did all of the acts alleged in the indictment." In this case the defendant has testified that he did not intend to permanently deprive the owner of the property, but at some point in time to notify the proper law enforcement agents, and to return the property. "If you believe this evidence or if it creates a reasonable doubt in your mind you shall say by your verdict, not guilty."

The court overruled the objections. By this ruling, appellant, using his fourth point, asserts the court "erred in failing to submit an affirmative instruction to acquit appellant of theft if the jury entertained a reasonable doubt as to whether he intended to deprive the owner of the property when he appropriated it."

■ It is at once apparent that the instruction appellant complains was not given is different from the instruction he requested the trial court to give; therefore, the appellate complaint was not preserved for review. Tex.R.App.P. 52(a). Moreover, the trial court did not err in refusing to give the instruction requested for two reasons. First, the instruction requested by appellant required the trial court to single out a limited part of the evidence, which would have been a prohibited comment on the weight of the evidence. *Plunkett v. State*, 580 S.W.2d 815, 824

(Tex.Cr.App.1979). Second, the requested instruction merely negated an element of the offense and, consequently, the affirmative instruction appellant requested was not required. *Sanders v. State*, 707 S.W.2d 78, 81 (Tex.Cr.App.1986); *Pelham v. State*, 664 S.W.2d 382, 385 (Tex.App.— Amarillo 1983, pet'n ref'd). Appellant's fourth point of error is overruled.

From four witnesses, appellant adduced testimony that his reputation for truth and veracity and for being a peaceable, law-abiding citizen was good. The State offered the testimony of a police officer that in these respects, appellant's reputation was bad. Upon this predicate, appellant unsuccessfully objected

> to the court's charge as a whole because it does not have not have [sic] a limiting instruction as to impeachment evidence that came in against the defendant. It does not have a limiting instruction on the character evidence that came in on the evidence, and would ask that the jury be limited in their consideration of both character evidence and impeachment evidence.

On appeal, appellant presents, and cites *Williams v. State*, 494 S.W.2d 559 (Tex.Cr. App.1973), to support, his fifth-point contention that the court "erred in failing to submit an instruction to the jury, limiting the impeachment of appellant's character witnesses to that purpose."

■ Again, it is apparent that appellant's complaint on appeal does not sufficiently comport with his trial-court complaint to preserve his complaint for review. In the trial court, appellant objected to the charge because there was no limiting instruction regarding the impeachment evidence admitted against *him*; on appeal, his objection is that the charge contained no instruction limiting the impeachment of his character *witnesses*.

■ Beyond that, appellant's reliance on *Williams* as requiring a limiting instruction in this prosecution is misplaced. In *Williams*, the State cross-examined defendant's reputation witness as to whether she had heard about appellant's arrests for extraneous offenses, for which he was not on

trial, and it was held the trial court should have responded to defendant's objection to the charge for the failure to limit consideration of the questions to the witness' credibility. 494 S.W.2d at 560.

In this prosecution, the State's cross-examination of appellant's reputation witnesses was mainly confined to the facts of the offense being prosecuted, and did not include inquiries of extraneous offenses. Since the impeaching testimony was, and could be, used only for the purpose of impeachment, no limiting instruction to the jury was required. *Cantrell v. State*, 731 S.W.2d 84, 95 (Tex.Cr.App.1987). Appellant's fifth point of error is overruled.

■ Appellant employs his sixth point to declare that section 31.03(b)(3) is unconstitutional. He characterizes the statute as one which

> prohibits "the doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application." No standard is given to guide officers charged with its enforcement as to what is meant by the terms "explicitly represented by any law enforcement [sic] as being stolen" and "believing it was stolen by another." This statute impermissible [sic] places unfettered discretion in the hands of the police, encourages arbitrary and erratic arrests and convictions, and is violative of due process.

Appellant then cites two United States Supreme Court decisions and two Texas Court of Criminal Appeals decisions without referencing their applicability to this prosecution.

At the outset, it is observed that appellant has not indicated whether he is relying upon state or federal constitutional issues, or both. One of his cited United States Supreme Court decisions holds that a statute prescribing payment of current wages, and a penalty for its violation, offends due process because of the uncertainty of its meaning. The other three decisions hold vagrancy ordinances void for vagueness in that, in brief, they fail to give a person of ordinary intelligence fair notice that his contemplated conduct is forbidden, and

they encourage arbitrary and erratic arrests and convictions. If, by these citations, appellant is relying upon disjunctive state and federal authority, he has not separated them to provide substantive analysis and argument for each. By failing to do so, appellant risks the overruling of his point of error for inadequately briefing of a multifarious point. *DeBlanc v. State*, 799 S.W.2d 701, 706 (Tex.Cr.App.1990); *McCambridge v. State*, 712 S.W.2d 499, 501–02 n. 9 (Tex.Cr.App.1986).

■ Furthermore, as is evident from appellant's presentation, he only contends the statute is vague, and therefore violative of due process, because no standard is provided the enforcing officers as to the meaning of the phrases "[property] was explicitly represented by any law enforcement agent [to the actor] as being stolen," and "[the actor appropriates the property] believing it was stolen by another." However, to successfully challenge the constitutionality of the statute, appellant is required to show that it is unconstitutional to him in his situation. *Village of Hoffman Estates v. Flipside, Hoffman Estates*, 455 U.S. 489, 494, 102 S.Ct. 1186, 1191, 71 L.Ed.2d 362 (1981); *Bynum v. State*, 767 S.W.2d 769, 774 (Tex.Cr.App.1989). Yet, appellant has not attempted to demonstrate, nor even to suggest, that his perceived constitutional deficiencies of the statute rendered it unconstitutional to him in this prosecution. Appellant's sixth point of error is overruled.

■ The court erred, so appellant charges in his seventh point, in refusing to allow him to elicit a response from the informant, Leatherwood, during her cross-examination recorded as follows:

Q. Now I suppose that—well, what was your motivation for going to work for Officer Green?

A. I can't remember that I had a motivation. He asked me if I would like to help him and I said yes. I felt like I could make up some of the stuff that I had done.

Q. Like what?

[The State]: Object, your Honor, this has been asked and answered.

The Court: Sustained.

Appellant argues that had he been able to effectively cross-examine Leatherwood as to what were some of the things she had done for which she felt she could make up for by going to work for officer Green, the jury would have seen that she had been in so much trouble over the past two decades that they may have given far less weight to her testimony.

■ The record does not show what the excluded testimony would have been and, absent that showing, nothing is presented for review. *Stewart v. State*, 686 S.W.2d 118, 122 (Tex.Cr.App.1984), *cert. denied*, 474 U.S. 866, 106 S.Ct. 190, 88 L.Ed.2d 159 (1985); *Duncan v. State*, 459 S.W.2d 822 (Tex.Cr.App.1970). Appellant does mention, preliminarily to showing the claimed error, that he was not permitted to go into the matter of Leatherwood's seven arrests, but, with certain exceptions, mere arrests are generally inadmissible for impeachment purposes, *Bell v. State*, 620 S.W.2d 116, 125 (Tex.Cr.App.1981), and he does not complain of the exclusion of this evidence. Appellant's seventh point of error is overruled.

The judgment is affirmed.