# NO. 12-09-00381-CR

# IN THE COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT

# TYLER, TEXAS

| | | |
|---|---|---|
| *DONNIE RAY WESTBROOK, APPELLANT* | § | *APPEAL FROM THE 392ND* |
| *V.* | § | *JUDICIAL DISTRICT COURT OF* |
| *THE STATE OF TEXAS, APPELLEE* | § | *HENDERSON COUNTY, TEXAS* |

---

### *MEMORANDUM OPINION*

Donnie Ray Westbrook appeals his conviction for murder. Appellant raises seven issues. The State argues, in one cross-issue, that the trial court erred by excluding one of its witnesses. We affirm.

### BACKGROUND

According to the testimony at trial, Appellant got into an argument with Jerry Huff one evening outside Appellant's father's house. The argument escalated into a physical altercation in which Huff was stabbed. Huff told the police that "Crippled Donnie" stabbed him. Appellant left the scene. Appellant and his father both testified later that Appellant merely hit Huff with his hand. Huff died days later of complications from the stab wound.

Appellant's father is named Donnie, and his nickname is "Crippled Donnie." Accordingly, the investigators initially thought that Huff had identified Appellant's father as the person who stabbed him. They brought Donnie (the father) to where Huff was lying on the ground and asked him if he was the one who had stabbed him. Huff said that it was not Donnie, but his son, Appellant, who had stabbed him. Huff subsequently picked Appellant out of a photo lineup, once more identifying him as the person who stabbed him.

A Henderson County grand jury returned an indictment against Appellant for the offense of murder. Appellant pleaded not guilty, and a trial was held. During trial, the State presented testimony from Kelly Green. Green had been Appellant's girlfriend. She testified that Appellant's father had told her that Appellant got into an argument with Huff, retrieved a knife, assaulted Huff in some way, and then "ran to get rid of the knife." Appellant objected to her testimony on the grounds that it was hearsay, but the trial court admitted it as impeachment of the father's testimony.

The jury found Appellant guilty of murder and assessed punishment at imprisonment for life. This appeal followed.

## SUFFICIENCY OF THE EVIDENCE

In his first issue, Appellant argues that the evidence is insufficient "in law and in fact" to support the verdict of the jury. Specifically, Appellant argues that Huff's identification of his assailant was too vague to support the verdict.

### Standard of Review

Prior to 2010, Texas appellate courts reviewed both the legal and factual sufficiency of the evidence to support a verdict in a criminal case. Legal sufficiency review is defined by *Jackson v. Virginia*, 443 U.S. 307, 315-16, 99 S. Ct. 2781, 2786-87, 61 L. Ed. 2d 560 (1979). Factual sufficiency review is defined by *Clewis v. State*, 922 S.W.2d 126, 134 (Tex. Crim. App. 1996). In October 2010, the court of criminal appeals held that there is "no meaningful distinction between the *Jackson v. Virginia* legal sufficiency standard and the *Clewis* factual sufficiency standard" and overruled *Clewis* and its progeny. *See Brooks v. State*, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010) (plurality opinion). The court held that "the *Jackson v. Virginia* standard is the only standard that a reviewing court should apply in determining whether the evidence is sufficient to support each element of a criminal offense that the State is required to prove beyond a reasonable doubt." *See id.* Accordingly, we will not independently consider Appellant's argument that the evidence is factually insufficient to support the verdict.

When reviewing the sufficiency of the evidence, we view all of the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *See Jackson*, 443 U.S. at 315-16, 99 S. Ct. at 2786-87; *Brooks v. State*, 323 S.W.3d at 899. Under this standard, a reviewing court does not

2

sit as a thirteenth juror and may not substitute its judgment for that of the fact finder by reevaluating the weight and credibility of the evidence. *See Brooks*, 323 S.W.3d at 899; *Dewberry v. State*, 4 S.W.3d 735, 740 (Tex. Crim. App. 1999). Instead, a reviewing court defers to the fact finder's resolution of conflicting evidence unless that resolution is not rational in light of the burden of proof. *See Brooks*, 323 S.W.3d at 899–900. The duty of a reviewing court is to ensure that the evidence presented actually supports a conclusion that the defendant committed the crime. *See Williams v. State*, 235 S.W.3d 742, 750 (Tex. Crim. App. 2007).

The sufficiency of the evidence is measured against the offense as defined by a hypothetically correct jury charge. *See Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997). Such a charge would include one that "accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant is tried." *Id.*

In this case, to support Appellant's conviction for murder, the State's evidence had to show that Appellant intentionally or knowingly caused Huff's death or that, with the intent to cause serious bodily injury, he committed an act clearly dangerous to human life that caused Huff's death. *See* TEX. PENAL CODE ANN. § 19.02(b) (Vernon 2003).

**Analysis**

At one point, Huff told officers that "Crippled Donnie" was the person who stabbed him. "Crippled Donnie" is Appellant's father's nickname. Based on these facts, Appellant makes a brief argument that the jury could not have reasonably concluded that he stabbed Huff because Huff had identified Appellant's father as his assailant. We disagree.

Huff first told the police that it was Donnie Dixson who stabbed him. This conversation occurred while Huff was lying in the street waiting for an ambulance to arrive. Donnie Dixson is a name shared by Appellant and his father, although Appellant goes by the name Donnie Westbrook. Because they were not sure to which "Donnie Dixson" Huff was referring, they asked him to be more specific. Eventually, he said his assailant was "Crippled Donnie." "Crippled Donnie" is Appellant's father's nickname.

Appellant's father was nearby–he was sitting on the porch of his trailer–and so the police brought him over to Huff and asked Huff if he was the one who had stabbed him. Huff immediately

and vociferously said it was not he, but his son who had stabbed him. He also got into an argument with the father, telling him that he knew his son had stabbed him. According to the police officer, Appellant's father apologized to Huff.

The police later conducted a photo lineup in which Huff once again identified Appellant as the person who stabbed him. Huff's identification of Appellant as his assailant, when considered in conjunction with the wounds he received, is sufficient for a rational jury to conclude that Appellant stabbed or cut Huff. Huff died from those injuries, and so the jury's verdict finding Appellant guilty of killing Huff is supported by the evidence.

There is evidence contrary to the verdict. Specifically, Appellant and Donnie Dixson both testified that Appellant merely punched Huff. Appellant's testimony was more specific. He testified that he tried to punch Huff, but that Huff pulled back and the punch merely "braised" him. Appellant said that he did not stab Huff with a knife.

The jury's resolution of the disputed factual issues was reasonable. When viewed in a light most favorable to the verdict, we hold that a rational jury could have concluded that the State proved each essential element of the offense beyond a reasonable doubt. We overrule Appellant's first issue.

### TESTIMONY OF WITNESS–PRETRIAL DISCOVERY

In his second issue, Appellant argues that the trial court erred in allowing the State to call Kelly Green as a witness. Specifically, Appellant argues that the State did not give timely notice that Green would be a witness and the trial court should have excluded her testimony on that basis.

**Background**

According to the record, the 392nd District Court entered a "Standing Criminal Discovery Order" in 1999. By the terms of this order, the State is obligated to provide a defendant's counsel with the name of all witnesses within the State's "possession, custody, and control" fifteen days prior to the "Pre-Trial Hearing" if the defendant makes a written request for that information.[1]

The State did not provide notice that Kelly Green would be a witness until the afternoon of

---

[1] Appellant did not make a written request for witnesses. However, the State did not argue in the trial court and does not argue on appeal that it did not have an obligation to disclose that Kelly Green would be a witness or that the trial court lacked the authority to require it to disclose nonexpert witnesses. Appellant's counsel argued that he had relied on the State's voluntary compliance with the trial court's discovery order.

4

the day before the start of the trial, which was later than fifteen days prior to a pretrial hearing.

## Standard of Review

We review the trial court's decision to allow a witness to testify who should have been disclosed, but was not, for an abuse of discretion. *See Martinez v. State*, 867 S.W.2d 30, 39 (Tex. Crim. App. 1993); *Stoker v. State*, 788 S.W.2d 1, 15 (Tex. Crim. App. 1989). We will not disturb the trial court's decision to allow or disallow a witness unless the appellant can show an abuse of discretion. *See Depena v. State*, 148 S.W.3d 461, 467 (Tex. App–Corpus Christi 2004, no pet.); *Castaneda v. State*, 28 S.W.3d 216, 223 (Tex. App.–El Paso 2000, pet. ref'd).

## Applicable Law

There is no general constitutional right to discovery in a criminal case. *See Weatherford v. Bursey*, 429 U.S. 545, 559, 97 S. Ct. 837, 846, 51 L. Ed. 2d 30 (1977). The Due Process Clause of the Fifth Amendment to the United States Constitution confers upon defendants a right to be informed about the existence of exculpatory evidence; it does not require the prosecution to "'reveal before trial the names of all witnesses who will testify unfavorably.'" *Ex parte Pruett*, 207 S.W.3d 767, 767 (Tex. Crim. App. 2005) (quoting *Weatherford*, 429 U.S. at 559, 97 S. Ct. at 845). The code of criminal procedure affords a defendant the right to discover expert witnesses. *See* TEX. CODE CRIM. PROC. ANN. art. 39.14 (Vernon Supp. 2010); *Badillo v. State*, 255 S.W.3d 125, 130 (Tex. App.–San Antonio 2008, no pet.). The code "does not mandate disclosure of witnesses generally." *Badillo*, 255 S.W.3d at 130.

In determining whether the trial court abused its discretion by allowing the testimony of an unlisted witness, we consider whether the state acted in bad faith in failing to provide the defense with the name of the witness and whether the defendant could reasonably anticipate that the witness would testify. *See Wood v. State*, 18 S.W.3d 642, 649-50 (Tex. Crim. App. 2000); *Nobles v. State*, 843 S.W.2d 503, 514-15 (Tex. Crim. App. 1992). A lack of bad faith alone will support a trial court's ruling allowing an unlisted witness to testify. *See Campbell v. State*, 900 S.W.2d 763, 772 (Tex. App.–Waco 1995, no pet.).

In determining whether the state acted in bad faith, we ask whether the defendant established that the state intended to deceive him, whether the state's notice left the defendant adequate time to prepare, and whether the state freely provided the defendant with information by maintaining an open file policy, providing updated witness lists, or promptly notifying the defendant of new

5

witnesses. *Hardin v. State*, 20 S.W.3d 84, 88 (Tex. App.–Texarkana 2000, pet. ref'd). Similarly, in determining whether the defense could have anticipated the state's witness, we look to the degree of surprise to the defendant, the degree of disadvantage inherent in that surprise, and the degree to which the trial court was able to remedy that surprise (e.g., by granting the defense a recess, postponement, or continuance). *Id*. at 88–89.

## Analysis

Appellant does not argue that the State acted in bad faith or that he could not anticipate that the State would call Green as a witness. Instead, Appellant argues that Green's testimony was "devastating" to him. This is not the test.

The State told the court that Green's identity had only become known to it in the time immediately prior to their disclosure of her name as a witness. The court implicitly credited this assertion that the State acted in good faith. The court also noted that Appellant's counsel was aware of Green, and that Green had brought Appellant to counsel's office on one occasion. Furthermore, the State made significant pretrial disclosure of its witnesses and evidence.

In sum, this witness was known to the defense, and the State disclosed that it would call her as soon as it became aware that she would be a witness. Appellant does not argue that the State acted in bad faith, that he had inadequate time to prepare, or even that he was surprised by the witness. Accordingly, we conclude that the trial court did not abuse its discretion in allowing Green to testify. We overrule Appellant's second issue.

### TESTIMONY OF WITNESS–SUBSTANCE

In his third issue, Appellant argues that the trial court erred by allowing Green to testify about a conversation she had with Donnie Dixson, Sr. Specifically, he argues that her testimony was hearsay and was not proper as impeachment evidence.

## Applicable Law

We review a trial court's decision to admit evidence over a hearsay objection for an abuse of discretion. *See Casey v. State*, 215 S.W.3d 870, 879 (Tex. Crim. App. 2007); *Willover v. State*, 70 S.W.3d 841, 845 (Tex. Crim. App. 2002). We will not disturb the evidentiary ruling of the trial court unless it falls outside the zone of reasonable disagreement. *See Montgomery v. State*, 810

6

S.W.2d 372, 391 (Tex. Crim. App. 1991) (op. on reh'g).  The rules of evidence forbid hearsay statements.  *See* TEX. R. EVID. 801(d).  By rule, hearsay is "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted."  *Id*.  However, a witness may be examined about a prior statement that is inconsistent with his testimony at trial.  *See* TEX. R. EVID. 613(a).

## Analysis

Appellant argues that the trial court erred by allowing Green to testify that Donnie Dixson, Sr., made the following eight statements to her:

1) [T]hat Mr. Huff rode up on his bicycle and started arguing with the Appellant,
2) [T]hat the Appellant then went into the house and wrapped his hands with tape,
3) [T]hat the Appellant came back with a butcher knife,
4) [T]hat the Appellant hit Mr. Huff with his fists,
5) [T]hat the Appellant then ran into the woods to get rid of the knife,
6) [T]hat the Appellant told his dad he hid in the woods and watched the law enforcement activity,
7) [T]hat the Appellant returned to the house wherein his dad, Donnie Dixson, Sr., gave him $300.00 to leave town,
8) [T]hat the Appellant told his dad he had thrown the knife in a lake.

Appellant does not argue that these statements do not impeach Donnie Dixson's testimony.  Indeed, these statements, except for the observation that Appellant hit Huff with his fists and that Huff started the argument, are diametrically opposed to the testimony he offered when called by the State.  Appellant argues instead that the State only called Dixson as a pretext so that it could offer the impeachment testimony.

A party may not impeach its own witness if the primary purpose of calling the witness is merely to introduce the witness's prior statement before the jury.  *See **Hughes v. State***, 4 S.W.3d 1, 4 (Tex. Crim. App. 1999).  Said another way, the impeachment evidence must be excluded under a Texas Rule of Evidence 403 balancing test if the state profits from the witness's testimony only if the jury misuses the evidence by considering it for its truth.  *Id*.

If it is "obvious" that a party calls a witness solely to impeach him with otherwise inadmissible statements, the balance tilts towards not permitting the impeachment.  *See **id***.  On the other hand, if the adverse testimony is a surprise to the calling party, that is a factor to be considered in the admission of the evidence.  *Id*. at 5.

The balancing test presents a close question in this case. In the ***Hughes*** case, the state "elicited no favorable testimony" from the witness it impeached and was not surprised that she was a hostile witness. *Id*. at 7. This case is slightly different. The State likely knew that Dixson would not offer a helpful account of what occurred the evening Huff was stabbed. In fact, it appears that he offered the jury the same account he had given to police investigators. Therefore, the State was not surprised by his testimony. But there were reasons in this case for the State to call Dixson. First, he was the only person other than Appellant who was an eyewitness and available to testify as to what occurred.[2] While the State likely anticipated that he would not offer an account of the stabbing that was consistent with their theory of the case, there were two important points of commonality that the State did elicit. Specifically, Dixson testified that there was an altercation between Huff and Appellant. This is important to establish that the men fought but also that Appellant was present, something the State could not otherwise prove with eyewitness testimony. Furthermore, he testified that he never saw a weapon in Huff's hand, which was important to discount a self–defense case or an argument that Huff's death was some kind of an accident. Finally, it was reasonable for the State to call Dixson so the members of the jury would not wonder why they had not heard from "Crippled Donnie," when Huff had first identified him as the person who stabbed him.

The State could have limited its direct examination to matters on which its theory of the case was consistent with Dixson's version of events. It did not, but we conclude that the trial court did not abuse its discretion in allowing the impeachment evidence. The State had proper reasons to call Dixson as a witness, and it was reasonable to allow the State to point out that the account he gave to the police and to Green are diametrically opposed.[3] We overrule Appellant's third issue.

---

[2] Appellant testified on his own behalf, but the State could neither compel his testimony nor rely on him to testify.

[3] Citing ***Jordan v. State***, 150 Tex. Crim. 213, 215, 200 S.W.2d 196, 197 (Tex. Crim. App. 1947), Appellant argues that the trial court impermissibly allowed the State to offer his confession to his father by way of impeachment. We disagree. Most of the complained of statements were contradictions of Dixson's testimony about what he perceived on the evening in question. One statement Green attributed to Dixson was a statement by Appellant that he watched the police from the woods. This is not a confession. Appellant asserts Green testified that Dixson told her that Appellant said he had thrown the knife in a lake. This statement does not appear in the passages cited by Appellant. Green did say that Dixson told her that Appellant "ran to get rid of the knife," but this appeared to be his own observation. Later in the trial Green testified as follows:

> I knew if he had gotten rid of the knife and was back by the time everybody was over, I thought it had to be in Cherokee Shores. And I knew of his favorite spot by the lake, so I thought that's where it might be.

8

In his fourth issue, Appellant argues that the trial court erred in allowing an officer to testify that Huff picked Appellant out of a photo lineup and said that he was the one who stabbed him. Appellant asserts that this testimony served to impermissibly bolster the "testimony of Mr. Huff." As a prerequisite to presenting an issue for appellate review, there must be a contemporaneous objection before the trial court. *See* TEX. R. APP. P. 33.1(a)(1)(A). Appellant did not object when the photo lineup was offered at trial. In fact, after a voir dire examination of the sponsoring officer, Appellant's counsel stated that he had "[n]o objection" to the exhibit. Therefore, Appellant affirmatively waived this issue. *See Estrada v. State*, 313 S.W.3d 274, 302 (Tex. Crim. App. 2010). We overrule Appellant's fourth issue.

## INSTRUCTIONS TO THE JURY

In his fifth issue, Appellant argues that the trial court erred in not instructing the jury that the impeachment evidence offered by Kelly Green and evidence of Appellant's prior convictions could be used by them only for impeachment purposes and not as substantive evidence. In his sixth issue, Appellant argues that the trial court erred because it refused his request to instruct the jury on the lesser included offense of assault.

### Limiting Instruction

Appellant did not request a limiting instruction when the evidence of his prior conviction was offered or when Green testified. He did not raise this issue at the charge conference. Appellant cites *Barr v. State*, 146 Tex. Crim. 178, 187, 172 S.W.2d 322, 327 (Tex. Crim. App. 1943) (op. on reh'g) and *Thurman v. State*, 382 S.W.2d 492, 493 (Tex. Crim. App. 1964), for the proposition that a trial court is required to give a limiting instruction for impeachment testimony even when one is not requested. The *Barr* opinion on rehearing appears to suggest that a trial court must give a limiting instruction even when one is not requested. However, the underlying opinion, which the court on rehearing states is "sound and supported by the decisions of the Court," makes clear that the trial court refused to limit the testimony and that the appellant had preserved that complaint.

---

She testified that she gathered this information from Dixson, but she never testified that Dixson told her that Appellant had thrown the knife in the lake. It appears that her surmise was based on her own synthesis of what she had been told.

9

*See **Barr v. State***, 146 Tex. Crim. 178, 183, 172 S.W.2d 322, 325–26 (Tex. Crim. App. 1942).  The ***Thurman*** decision cites the ***Barr*** decision and does not impose a requirement on the trial court to give an unrequested limiting instruction.  ***Thurman***, 382 S.W.2d at 493.

In this case, Appellant did not request a limiting instruction either for his prior conviction in a criminal case or for Kelly Green's testimony impeaching Donnie Dixson's testimony.  Accordingly, he has failed to preserve this issue for our consideration.  *See **Colson v. State***, 848 S.W.2d 328, 332 (Tex. App.–Amarillo 1993, pet. ref'd); *c.f.* ***Hammock v. State***, 46 S.W.3d 889, 895 (Tex. Crim. App. 2001) (request for limiting instruction for prior conviction must be made when evidence is admitted); ***Johnson v. State***, 629 S.W.2d 731, 736 (Tex. Crim. App. 1981) (failure to submit unrequested limiting instruction for extraneous offense not fundamental error).  We overrule Appellant's fifth issue.

**Lesser Included Offense**

Appellant requested that the trial court instruct the jury on the lesser included offense of assault.  He argued that this instruction was required because of his testimony that he hit Huff in the head with his hand.  He also testified that he did not know how it came to be that Huff was cut or stabbed.

*Standard of Review and Applicable Law*

Article 36.14 of the code of criminal procedure requires the trial court to deliver to the jury "a written charge distinctly setting forth the law applicable to the case. . . ."  TEX. CODE CRIM. PROC. ANN. art. 36.14 (Vernon 2007).  At the defendant's request, a trial court must include a lesser included offense instruction in the jury charge if the offense is a lesser included offense and there is some evidence that, if the defendant is guilty, he is guilty only of the lesser offense.  *See **Guzman v. State***, 188 S.W.3d 185, 188 (Tex. Crim. App. 2006).

An offense is a lesser included offense if (1) it is established by proof of the same or less than all the facts required to establish the commission of the offense charged; (2) it differs from the offense charged only in the respect that a less serious injury or risk of injury to the same person, property, or public interest suffices to establish its commission; (3) it differs from the offense charged only in the respect that a less culpable mental state suffices to establish its commission; or (4) it consists of an attempt to commit the offense charged or an otherwise included offense.  *See* TEX. CODE CRIM. PROC. ANN. art. 37.09 (Vernon 2006); *see also **Hall v. State***, 225 S.W.3d 524, 527

10

(Tex. Crim. App. 2007).

The first step in the lesser included offense analysis, determining whether an offense is a lesser included offense of the alleged offense, is a question of law. *Hall*, 225 S.W.3d at 535. This analysis consists of comparing the offense as charged in the charging instrument with the elements of the proposed lesser included offense to see if the elements of the lesser offense are alleged in the indictment or can be deduced from the facts alleged in the indictment. *See McKithan v. State*, 324 S.W.3d 582, 587 (Tex. Crim. App. 2010). This step of the analysis does not depend on the evidence presented at trial. *See Hall*, 225 S.W.3d at 535–36. The second step evaluates whether the proof for the offense charged includes the proof necessary to establish the lesser included offense and whether there is evidence in the record that would permit a jury rationally to find that the defendant is guilty only of the lesser included offense. *Id*. at 536.

*Analysis*

As the court of criminal appeals recognized in *Hayward v. State*, 158 S.W.3d 476, 479 (Tex. Crim. App. 2005), assault can be a lesser included offense of murder. The murder charged in this case is essentially an assault resulting in death. Therefore, assault is an offense established by proof of the same or less than all the facts required to establish the commission of the offense as charged in the indictment. *See* TEX. CODE CRIM. PROC. ANN. art. 37.09.

However, proof of the charged offense does not include proof of the assault to which Appellant admitted. Appellant told the jury that he struck Huff in the face or head. This assault is not included in the proof that someone stabbed Huff with a knife that entered eight to ten inches into his body.

This case is like the scenario presented in *Campbell v. State*, 149 S.W.3d 149, 152 (Tex. Crim. App. 2004). In that case, the defendant was on trial for possession of drugs. He testified on his behalf and admitted possessing different drugs. *Id*. at 150–51. The court of criminal appeals stated in *Campbell* that the "mere fact that the language in an indictment technically covers two instances of conduct does not mean that each instance is part of the same criminal act for which the Appellant was indicted." *Id*. at 154. In some cases that distinction may be difficult to make. In this case it is not, and the trial court did not err in declining to instruct the jury on the misdemeanor offense of assault because proof of that offense is not included within the proof necessary to prove the greater charge. We overrule Appellant's sixth issue.

11

In his seventh issue, Appellant argues that the trial court erred in not ordering an evaluation of his mental competency after he escaped from custody following the guilt/innocence portion of the trial.

**Applicable Law and Standard of Review**

A person is incompetent to stand trial if he does not have either a sufficient present ability to consult with counsel with a reasonable degree of rational understanding or a rational as well as factual understanding of the proceedings against him. *See* TEX. CODE CRIM. PROC ANN. art. 46B.003 (Vernon 2006). A person is presumed to be competent. *Id*.

Upon suggestion that a defendant may be incompetent to stand trial, the trial court must conduct an informal inquiry to determine whether there is some evidence from any source that would support a finding that the defendant may be incompetent to stand trial. TEX. CODE CRIM. PROC. ANN. art. 46B.004 (Vernon 2006). If the trial court determines there is evidence to support a finding of incompetency, the court will stay the proceedings and order further evaluation of the defendant's competency to stand trial. *See id*. arts. 46B.004(d), 46B.005(a) (Vernon 2006). We review the trial court's decision not to stay the proceedings for an abuse of discretion. *See **Luna v. State***, 268 S.W.3d 594, 600 (Tex. Crim. App. 2008).

**Analysis**

Appellant escaped from custody following receipt of the jury's verdict in the guilt/innocence phase of the trial. He called the police the next day and was returned to custody without incident. Upon his return, Appellant's counsel represented to the court that he had visited briefly with Appellant and he believed that Appellant lacked the ability to comprehend the proceedings or to assist with his defense.

The trial court conducted an informal hearing on the matter, which included hearing testimony from the officer who apprehended Appellant. The officer testified that he had a conversation with Appellant and that Appellant did not appear to have difficulty communicating with him. The trial court, after hearing evidence and considering its own observations, concluded that there was not evidence to support a finding of incompetency and proceeded with the punishment phase of the trial.

While counsel's statement did raise a question about Appellant's competency, there was countervailing evidence. For example, Appellant was able to have a rational discussion with the officer who arrested him. Furthermore, that arrest occurred after Appellant called the police and told them where he was. The court had also heard evidence that Appellant had previously feigned a mental health issue to have himself admitted to a mental health facility so that he could spend time with Kelly Green, who had gone to the facility to escape him. After reviewing the record, we hold that the trial court did not abuse its discretion when it concluded that further examination of Appellant's competence to proceed was unnecessary after conducting an informal inquiry. We overrule Appellant's seventh issue.

### ADMISSION OF EVIDENCE

In one cross–issue, the State argues that the trial court erred when it did not allow the State's handwriting expert to testify.

The State gave Appellant notice of six expert witnesses it intended to call twenty days prior to trial. The disclosure did not state their area of expertise or their addresses, though this information may have been known to Appellant's counsel. It appears that these witnesses were experts in handwriting analysis. Texas law provides that the state must provide, in advance of trial, the name and address of an expert witness it proposes to call. *See* TEX. CODE CRIM. PROC. ANN. art. 39.14 (Vernon Supp. 2010). Likewise, the district court judge had issued a standing discovery order in criminal cases, which required disclosure of witnesses.[4]

Both article 39.14 and the standing discovery order require the defendant to request discovery, and neither imposes any requirement on the state in the absence of a request. The standing discovery order states that the court "understands" that the district attorney has an "open file" policy. Appellant did not make a request for discovery.

The State never disclosed the report generated by the expert witness to the defense. The State sought to call the witness on Monday, August 17, 2009, and the State represented that the report had only been completed the Friday before.[5] The trial court excluded the witness. The trial

---

[4] The State terms this discovery order "non existent" and "now defunct" but does not explain how this might be so.

[5] Discovery issues abounded in this trial. Appellant's counsel complained about a lack of notice of several

court was concerned that the late creation of a report – it was only completed after the trial had been underway for a week-undermined counsel's ability to prepare. It excused the failure to request discovery because of a "course of dealing" between the State and the defense bar and because it credited Appellant's argument that he relied to his detriment on the State's voluntary disclosures, which tracked the discovery order.

We express no opinion on the trial court's discovery ruling, although we note that any determination by the trial court that the State acted in bad faith by not having forensic work completed in advance of trial would be entitled to some deference. *See*, *e.g.*, *State v. Wright*, 830 S.W.2d 309, 313 (Tex. App.–Tyler 1992, no pet.) (overruling exclusion of one witness but holding that the state had not presented "a sufficient record" to show error in the exclusion of two other witnesses). Instead, we determine that the State has not preserved this complaint for our review. The ordinary notions of procedural default apply equally to an appellant and the state. *See State v. Mercado*, 972 S.W.2d 75, 78 (Tex. Crim. App. 1998). As a predicate to presenting a complaint on appeal, Texas Rule of Evidence 103(a) requires a party to object to the ruling excluding the evidence and to make an offer of proof of the excluded evidence. When the party fails to make an offer of proof or the substance of the evidence is not apparent from the context, the party may not urge error in the exclusion of evidence on appeal. *See Guidry v. State*, 9 S.W.3d 133, 153 (Tex. Crim. App. 1999).

In this case, we could hypothesize that the expert may have testified that Appellant authored a handwritten note that was admitted into evidence. However, there was no offer of proof or outline of the testimony of the witness or her qualifications. Therefore, we cannot conclude that the trial court's implicit determinations that the State should have obtained the report earlier and that Appellant did not have sufficient time to prepare for the witness were unreasonable.

Even if Appellant had preserved this complaint, the trial court instructed the State that while

witnesses and pieces of evidence. The State provided substantial pretrial disclosure of evidence and witnesses, but some parts of its case, notably witness Kelly Green and the fingerprint expert's report, were developed late, even during the trial. As such, the discussions about evidence spanned many volumes of the record. There were several extrastatutory factors in play in the trial court's rulings on discovery matters. First, the State argued that there was no requirement for disclosure because Appellant had not made a request for discovery as contemplated by the statute and the standing discovery order. However, the prosecutor also conceded that the trial court "has to make a fairness inquiry . . ." in response to questioning from the trial court about late disclosure of witnesses and, separately, did not argue that it was not required to disclose Kelly Green as a witness. Second, the parties acted under the assumption that the report was required to be provided either by statute or the discovery order.

it was excluding the witness, its ruling "doesn't mean you can't try it some other way. . . ." Later, Appellant testified and admitted that he wrote the note. Assuming the State's evidence would have shown that Appellant authored the note, his admission on that point had the effect of withdrawing his objection to the expert testimony and would serve to cure any error. We overrule the State's cross–issue.

## DISPOSITION

Having overruled Appellant's seven issues and the State's cross–issue, we *affirm* the judgment of the trial court.

**SAM GRIFFITH**
Justice

Opinion delivered February 28, 2011.
*Panel consisted of Worthen, C.J., Griffith, J., and Hoyle, J.*

(DO NOT PUBLISH)