NO. 12-09-00381-CR

            

IN THE COURT OF APPEALS 

 

            TWELFTH
COURT OF APPEALS DISTRICT

 

                                      TYLER,
TEXAS

DONNIE RAY WESTBROOK,                         §                 APPEAL
FROM THE 392ND

APPELLANT

 

V.                                                                         §                 JUDICIAL
DISTRICT COURT OF

 

THE STATE OF TEXAS,

APPELLEE                                                        §                 HENDERSON
COUNTY, TEXAS

                                                                                                 








MEMORANDUM
OPINION

Donnie
Ray Westbrook appeals his conviction for murder.  Appellant raises seven
issues.  The State argues, in one cross-issue, that the trial court erred by
excluding one of its witnesses.  We affirm.

 

Background

According
to the testimony at trial, Appellant got into an argument with Jerry Huff one
evening outside Appellant’s father’s house.  The argument escalated into a physical
altercation in which Huff was stabbed.  Huff told the police that “Crippled
Donnie” stabbed him.  Appellant left the scene.  Appellant and his father both
testified later that Appellant merely hit Huff with his hand.  Huff died days
later of complications from the stab wound. 

Appellant’s
father is named Donnie, and his nickname is “Crippled Donnie.”  Accordingly,
the investigators initially thought that Huff had identified Appellant’s father
as the person who stabbed him.  They brought Donnie (the father) to where Huff was
lying on the ground and asked him if he was the one who had stabbed him.  Huff
said that it was not Donnie, but his son, Appellant, who had stabbed him.  Huff
subsequently picked Appellant out of a photo lineup, once more identifying him
as the person who stabbed him.

A
Henderson County grand jury returned an indictment against Appellant for the
offense of murder.  Appellant pleaded not guilty, and a trial was held.  During
trial, the State presented testimony from Kelly Green.  Green had been Appellant’s
girlfriend.  She testified that Appellant’s father had told her that Appellant
got into an argument with Huff, retrieved a knife, assaulted Huff in some way,
and then “ran to get rid of the knife.”  Appellant objected to her testimony on
the grounds that it was hearsay, but the trial court admitted it as impeachment
of the father’s testimony.  

The
jury found Appellant guilty of murder and assessed punishment at imprisonment
for life.  This appeal followed.

 

Sufficiency of the Evidence

            In
his first issue, Appellant argues that the evidence is insufficient “in law and
in fact” to support the verdict of the jury.  Specifically, Appellant argues
that Huff’s identification of his assailant was too vague to support the
verdict.  

Standard
of Review

Prior
to 2010, Texas appellate courts reviewed both the legal and factual sufficiency
of the evidence to support a verdict in a criminal case.  Legal sufficiency
review is defined by Jackson v. Virginia, 443 U.S. 307, 315-16,
99 S. Ct. 2781, 2786-87, 61 L. Ed. 2d 560 (1979).  Factual sufficiency review
is defined by Clewis v. State, 922 S.W.2d 126, 134 (Tex. Crim.
App. 1996).  In October 2010, the court of criminal appeals held that there is “no
meaningful distinction between the Jackson v. Virginia legal
sufficiency standard and the Clewis factual sufficiency standard”
and overruled Clewis and its progeny.  See Brooks v. State,
323 S.W.3d 893, 912 (Tex. Crim. App. 2010) (plurality opinion).  The court held
that “the Jackson v. Virginia standard is the only standard that
a reviewing court should apply in determining whether the evidence is sufficient
to support each element of a criminal offense that the State is required to
prove beyond a reasonable doubt.”   See id.  Accordingly,
we will not independently consider Appellant’s argument that the evidence is
factually insufficient to support the verdict.

When
reviewing the sufficiency of the evidence, we view all of the evidence in the
light most favorable to the verdict to determine whether any rational trier of
fact could have found the essential elements of the crime beyond a reasonable
doubt.  See Jackson, 443 U.S. at 315-16, 99 S. Ct. at 2786-87; Brooks
v. State, 323 S.W.3d at 899.  Under this standard, a reviewing court
does not sit as a thirteenth juror and may not substitute its judgment for that
of the fact finder by reevaluating the weight and credibility of the evidence.  See
Brooks, 323 S.W.3d at 899; Dewberry v. State, 4
S.W.3d 735, 740 (Tex. Crim. App. 1999).  Instead, a reviewing court defers to
the fact finder’s resolution of conflicting evidence unless that resolution is
not rational in light of the burden of proof.  See Brooks,
323 S.W.3d at 899–900.  The duty of a reviewing court is to ensure that the evidence
presented actually supports a conclusion that the defendant committed the
crime.  See Williams v. State, 235 S.W.3d 742, 750 (Tex. Crim.
App. 2007).

The
sufficiency of the evidence is measured against the offense as defined by a
hypothetically correct jury charge.  See Malik v. State, 953
S.W.2d 234, 240 (Tex. Crim. App. 1997).  Such a charge would include one that “accurately
sets out the law, is authorized by the indictment, does not unnecessarily
increase the State=s
burden of proof or unnecessarily restrict the State’s theories of liability,
and adequately describes the particular offense for which the defendant is
tried.”  Id.  

In
this case, to support Appellant’s conviction for murder, the State’s evidence
had to show that Appellant intentionally or knowingly caused Huff’s death or
that, with the intent to cause serious bodily injury, he committed an act
clearly dangerous to human life that caused Huff’s death.  See Tex. Penal Code Ann. § 19.02(b) (Vernon
2003).

Analysis

At
one point, Huff told officers that “Crippled Donnie” was the person who stabbed
him.  “Crippled Donnie” is Appellant’s father’s nickname.  Based on these facts,
Appellant makes a brief argument that the jury could not have reasonably
concluded that he stabbed Huff because Huff had identified Appellant’s father
as his assailant.  We disagree.

Huff
first told the police that it was Donnie Dixson who stabbed him.  This
conversation occurred while Huff was lying in the street waiting for an
ambulance to arrive.  Donnie Dixson is a name shared by Appellant and his
father, although Appellant goes by the name Donnie Westbrook.  Because they
were not sure to which “Donnie Dixson” Huff was referring, they asked him to be
more specific.  Eventually, he said his assailant was “Crippled Donnie.”  “Crippled
Donnie” is Appellant’s father’s nickname.  

Appellant’s
father was nearby–he was sitting on the porch of his trailer–and so the police
brought him over to Huff and asked Huff if he was the one who had stabbed him. 
Huff immediately and vociferously said it was not he, but his son who had
stabbed him.  He also got into an argument with the father, telling him that he
knew his son had stabbed him.  According to the police officer, Appellant’s
father apologized to Huff.  

The
police later conducted a photo lineup in which Huff once again identified
Appellant as the person who stabbed him.  Huff’s identification of Appellant as
his assailant, when considered in conjunction with the wounds he received, is
sufficient for a rational jury to conclude that Appellant stabbed or cut Huff. 
Huff died from those injuries, and so the jury’s verdict finding Appellant
guilty of killing Huff is supported by the evidence.

There
is evidence contrary to the verdict.  Specifically, Appellant and Donnie Dixson
both testified that Appellant merely punched Huff.  Appellant’s testimony was
more specific.  He testified that he tried to punch Huff, but that Huff pulled
back and the punch merely “braised” him.  Appellant said that he did not stab
Huff with a knife.  

The
jury’s resolution of the disputed factual issues was reasonable.  When viewed in
a light most favorable to the verdict, we hold that a rational jury could have
concluded that the State proved each essential element of the offense beyond a
reasonable doubt.  We overrule Appellant’s first issue.

 

Testimony of Witness–Pretrial Discovery

            In
his second issue, Appellant argues that the trial court erred in allowing the
State to call Kelly Green as a witness.  Specifically, Appellant argues that
the State did not give timely notice that Green would be a witness and the
trial court should have excluded her testimony on that basis.

Background

            According
to the record, the 392nd District Court entered a “Standing Criminal Discovery
Order” in 1999.  By the terms of this order, the State is obligated to provide
a defendant’s counsel with the name of all witnesses within the State’s “possession,
custody, and control” fifteen days prior to the “Pre-Trial Hearing” if the
defendant makes a written request for that information.[1]  

The
State did not provide notice that Kelly Green would be a witness until the
afternoon of the day before the start of the trial, which was later than
fifteen days prior to a pretrial hearing.  

Standard
of Review

We
review the trial court’s decision to allow a witness to testify who should have
been disclosed, but was not, for an abuse of discretion.  See Martinez v.
State, 867 S.W.2d 30, 39 (Tex. Crim. App. 1993); Stoker v. State,
788 S.W.2d 1, 15 (Tex. Crim. App. 1989).  We will not disturb the trial court’s
decision to allow or disallow a witness unless the appellant can show an abuse
of discretion.  See Depena v. State, 148 S.W.3d 461, 467
(Tex. App–Corpus Christi 2004, no pet.); Castaneda v. State, 28
S.W.3d 216, 223 (Tex. App.–El Paso 2000, pet. ref’d).

Applicable
Law

There
is no general constitutional right to discovery in a criminal case.  See Weatherford
v. Bursey, 429 U.S. 545, 559, 97 S. Ct. 837, 846, 51 L. Ed. 2d 30 (1977).
 The Due Process Clause of the Fifth Amendment to the United States
Constitution confers upon defendants a right to be informed about the existence
of exculpatory evidence; it does not require the prosecution to “‘reveal before
trial the names of all witnesses who will testify unfavorably.’” Ex parte
Pruett, 207 S.W.3d 767, 767 (Tex. Crim. App. 2005) (quoting Weatherford,
429 U.S. at 559, 97 S. Ct. at 845).  The code of criminal procedure affords a
defendant the right to discover expert witnesses.  See Tex. Code Crim. Proc. Ann. art. 39.14
(Vernon Supp. 2010); Badillo v. State, 255 S.W.3d 125, 130 (Tex.
App.–San Antonio 2008, no pet.).  The code “does not mandate disclosure of
witnesses generally.”  Badillo, 255 S.W.3d at 130.  

In
determining whether the trial court abused its discretion by allowing the
testimony of an unlisted witness, we consider whether the state acted in bad
faith in failing to provide the defense with the name of the witness and
whether the defendant could reasonably anticipate that the witness would
testify.  See Wood v. State, 18 S.W.3d 642, 649-50 (Tex. Crim.
App. 2000); Nobles v. State, 843 S.W.2d 503, 514-15 (Tex. Crim.
App. 1992). A lack of bad faith alone will support a trial court’s ruling
allowing an unlisted witness to testify.  See Campbell v. State,
900 S.W.2d 763, 772 (Tex. App.–Waco 1995, no pet.).

In
determining whether the state acted in bad faith, we ask whether the defendant
established that the state intended to deceive him, whether the state’s notice
left the defendant adequate time to prepare, and whether the state freely
provided the defendant with information by maintaining an open file policy,
providing updated witness lists, or promptly notifying the defendant of new
witnesses.  Hardin v. State, 20 S.W.3d 84, 88 (Tex. App.–Texarkana
2000, pet. ref’d).  Similarly, in determining whether the defense could have
anticipated the state’s witness, we look to the degree of surprise to the
defendant, the degree of disadvantage inherent in that surprise, and the degree
to which the trial court was able to remedy that surprise (e.g., by granting
the defense a recess, postponement, or continuance).  Id. at 88–89.

Analysis

Appellant
does not argue that the State acted in bad faith or that he could not
anticipate that the State would call Green as a witness.  Instead, Appellant
argues that Green’s testimony was “devastating” to him.  This is not the test. 


The
State told the court that Green’s identity had only become known to it in the
time immediately prior to their disclosure of her name as a witness.  The court
implicitly credited this assertion that the State acted in good faith.  The
court also noted that Appellant’s counsel was aware of Green, and that Green
had brought Appellant to counsel’s office on one occasion.  Furthermore, the
State made significant pretrial disclosure of its witnesses and evidence.  

In
sum, this witness was known to the defense, and the State disclosed that it
would call her as soon as it became aware that she would be a witness. 
Appellant does not argue that the State acted in bad faith, that he had
inadequate time to prepare, or even that he was surprised by the witness. 
Accordingly, we conclude that the trial court did not abuse its discretion in
allowing Green to testify.  We overrule Appellant’s second issue.

 

Testimony of Witness–Substance

In
his third issue, Appellant argues that the trial court erred by allowing Green
to testify about a conversation she had with Donnie Dixson, Sr.  Specifically,
he argues that her testimony was hearsay and was not proper as impeachment
evidence.  

 

Applicable
Law

We
review a trial court’s decision to admit evidence over a hearsay objection for
an abuse of discretion.  See Casey v. State, 215 S.W.3d
870, 879 (Tex. Crim. App. 2007); Willover v. State, 70 S.W.3d
841, 845 (Tex. Crim. App. 2002).  We will not disturb the evidentiary ruling of
the trial court unless it falls outside the zone of reasonable disagreement.  See
Montgomery v. State, 810 S.W.2d 372, 391 (Tex. Crim. App. 1991)
(op. on reh’g).  The rules of evidence forbid hearsay statements.  See Tex. R. Evid. 801(d).  By rule, hearsay
is “a statement, other than one made by the declarant while testifying at the
trial or hearing, offered in evidence to prove the truth of the matter
asserted.”  Id.  However, a witness may be examined about a prior
statement that is inconsistent with his testimony at trial.  See Tex. R. Evid. 613(a).  

Analysis

Appellant
argues that the trial court erred by allowing Green to testify that Donnie Dixson,
Sr., made the following eight statements to her:

 

1)      
[T]hat Mr. Huff rode up on his
bicycle and started arguing with the Appellant,

2)      
[T]hat the Appellant then went
into the house and wrapped his hands with tape,

3)      
[T]hat the Appellant came back
with a butcher knife,

4)      
[T]hat the Appellant hit Mr. Huff
with his fists,

5)      
[T]hat the Appellant then ran into
the woods to get rid of the knife,

6)      
[T]hat the Appellant told his dad
he hid in the woods and watched the law enforcement activity,

7)      
[T]hat the Appellant returned to
the house wherein his dad, Donnie Dixson, Sr., gave him $300.00 to leave town, 

8)      
[T]hat the Appellant told his dad
he had thrown the knife in a lake.

 

 

Appellant
does not argue that these statements do not impeach Donnie Dixson’s testimony. 
Indeed, these statements, except for the observation that Appellant hit Huff
with his fists and that Huff started the argument, are diametrically opposed to
the testimony he offered when called by the State.  Appellant argues instead
that the State only called Dixson as a pretext so that it could offer the
impeachment testimony.  

A
party may not impeach its own witness if the primary purpose of calling the
witness is merely to introduce the witness’s prior statement before the jury.  See
Hughes v. State, 4 S.W.3d 1, 4 (Tex. Crim. App. 1999).  Said another
way, the impeachment evidence must be excluded under a Texas Rule of Evidence
403 balancing test if the state profits from the witness’s testimony only if
the jury misuses the evidence by considering it for its truth.  Id. 


If
it is “obvious” that a party calls a witness solely to impeach him with
otherwise inadmissible statements, the balance tilts towards not permitting the
impeachment.  See id.  On the other hand, if the adverse
testimony is a surprise to the calling party, that is a factor to be considered
in the admission of the evidence.  Id. at 5.  

The
balancing test presents a close question in this case.  In the Hughes
case, the state “elicited no favorable testimony” from the witness it impeached
and was not surprised that she was a hostile witness.  Id. at 7. 
This case is slightly different.  The State likely knew that Dixson would not
offer a helpful account of what occurred the evening Huff was stabbed.  In
fact, it appears that he offered the jury the same account he had given to police
investigators.  Therefore, the State was not surprised by his testimony.  But
there were reasons in this case for the State to call Dixson.  First, he was
the only person other than Appellant who was an eyewitness and available to
testify as to what occurred.[2]  While the State likely
anticipated that he would not offer an account of the stabbing that was consistent
with their theory of the case, there were two important points of commonality
that the State did elicit.  Specifically, Dixson testified that there was an
altercation between Huff and Appellant.  This is important to establish that
the men fought but also that Appellant was present, something the State could
not otherwise prove with eyewitness testimony.  Furthermore, he testified that he
never saw a weapon in Huff’s hand, which was important to discount a self–defense
case or an argument that Huff’s death was some kind of an accident.  Finally, it
was reasonable for the State to call Dixson so the members of the jury would
not wonder why they had not heard from “Crippled Donnie,” when Huff had first
identified him as the person who stabbed him. 

The
State could have limited its direct examination to matters on which its theory
of the case was consistent with Dixson’s version of events.  It did not, but we
conclude that the trial court did not abuse its discretion in allowing the
impeachment evidence.  The State had proper reasons to call Dixson as a
witness, and it was reasonable to allow the State to point out that the account
he gave to the police and to Green are diametrically opposed.[3]  We overrule Appellant’s
third issue.

 

Photo Lineup

In
his fourth issue, Appellant argues that the trial court erred in allowing an
officer to testify that Huff picked Appellant out of a photo lineup and said
that he was the one who stabbed him.  Appellant asserts that this testimony
served to impermissibly bolster the “testimony of Mr. Huff.”  As a prerequisite
to presenting an issue for appellate review, there must be a contemporaneous
objection before the trial court.  See Tex.
R. App. P. 33.1(a)(1)(A).  Appellant did not object when the photo
lineup was offered at trial.  In fact, after a voir dire examination of the sponsoring
officer, Appellant’s counsel stated that he had “[n]o objection” to the
exhibit.  Therefore, Appellant affirmatively waived this issue.  See Estrada
v. State, 313 S.W.3d 274, 302 (Tex. Crim. App. 2010).   We
overrule Appellant’s fourth issue.

 

Instructions to the Jury

            In
his fifth issue, Appellant argues that the trial court erred in not instructing
the jury that the impeachment evidence offered by Kelly Green and evidence of Appellant’s
prior convictions could be used by them only for impeachment purposes and not
as substantive evidence.  In his sixth issue, Appellant argues that the trial
court erred because it refused his request to instruct the jury on the lesser
included offense of assault.

Limiting
Instruction

            Appellant
did not request a limiting instruction when the evidence of his prior conviction
was offered or when Green testified.  He did not raise this issue at the charge
conference.  Appellant cites Barr v. State, 146 Tex. Crim. 178,
187, 172 S.W.2d 322, 327 (Tex. Crim. App. 1943) (op. on reh’g) and Thurman
v. State, 382 S.W.2d 492, 493 (Tex. Crim. App. 1964), for the
proposition that a trial court is required to give a limiting instruction for
impeachment testimony even when one is not requested.  The Barr opinion
on rehearing appears to suggest that a trial court must give a limiting
instruction even when one is not requested.  However, the underlying opinion,
which the court on rehearing states is “sound and supported by the decisions of
the Court,” makes clear that the trial court refused to limit the testimony and
that the appellant had preserved that complaint.  See Barr v. State,
146 Tex. Crim. 178, 183, 172 S.W.2d 322, 325–26 (Tex. Crim. App. 1942).  The Thurman
decision cites the Barr decision and does not impose a
requirement on the trial court to give an unrequested limiting instruction.  Thurman,
382 S.W.2d at 493.

            In
this case, Appellant did not request a limiting instruction either for his
prior conviction in a criminal case or for Kelly Green’s testimony impeaching
Donnie Dixson’s testimony.  Accordingly, he has failed to preserve this issue
for our consideration.  See Colson v. State, 848 S.W.2d 328, 332
(Tex. App.–Amarillo 1993, pet. ref’d); c.f. Hammock v. State,
46 S.W.3d 889, 895 (Tex. Crim. App. 2001) (request for limiting instruction for
prior conviction must be made when evidence is admitted); Johnson v.
State, 629 S.W.2d 731, 736 (Tex. Crim. App. 1981) (failure to submit unrequested
limiting instruction for extraneous offense not fundamental error).  We
overrule Appellant’s fifth issue.

Lesser
Included Offense

Appellant
requested that the trial court instruct the jury on the lesser included offense
of assault.  He argued that this instruction was required because of his
testimony that he hit Huff in the head with his hand.  He also testified that
he did not know how it came to be that Huff was cut or stabbed.  

            Standard
of Review and Applicable Law

            Article
36.14 of the code of criminal procedure requires the trial court to deliver to
the jury “a written charge distinctly setting forth the law applicable to the
case. . . .”  Tex. Code Crim. Proc. Ann.
art. 36.14 (Vernon 2007).  At
the defendant’s request, a trial court must include a lesser included offense
instruction in the jury charge if the offense is a lesser included offense and
there is some evidence that, if the defendant is guilty, he is guilty only of
the lesser offense.  See Guzman v. State, 188 S.W.3d 185,
188 (Tex. Crim. App. 2006). 

            An
offense is a lesser included offense if (1) it is established by proof of the
same or less than all the facts required to establish the commission of the
offense charged; (2) it differs from the offense charged only in the respect
that a less serious injury or risk of injury to the same person, property, or
public interest suffices to establish its commission; (3) it differs from the
offense charged only in the respect that a less culpable mental state suffices
to establish its commission; or (4) it consists of an attempt to commit the
offense charged or an otherwise included offense.  See Tex. Code Crim. Proc. Ann. art. 37.09 (Vernon 2006); see also Hall
v. State, 225 S.W.3d 524, 527 (Tex. Crim. App. 2007).

            The
first step in the lesser included offense analysis, determining whether an
offense is a lesser included offense of the alleged offense, is a question of
law.  Hall, 225 S.W.3d at 535.  This analysis consists of
comparing the offense as charged in the charging instrument with the elements
of the proposed lesser included offense to see if the elements of the lesser
offense are alleged in the indictment or can be deduced from the facts alleged
in the indictment.  See McKithan v. State, 324 S.W.3d 582, 587
(Tex. Crim. App. 2010).  This step of the analysis does not depend on the
evidence presented at trial.  See Hall, 225 S.W.3d at 535–36. 
The second step evaluates whether the proof for the offense charged includes
the proof necessary to establish the lesser included offense and whether there
is evidence in the record that would permit a jury rationally to find that the
defendant is guilty only of the lesser included offense.  Id. at
536.  

Analysis

As
the court of criminal appeals recognized in Hayward v. State, 158
S.W.3d 476, 479 (Tex. Crim. App. 2005), assault can be a lesser included
offense of murder.  The murder charged in this case is essentially an assault resulting
in death.  Therefore, assault is an offense established by proof of the same or
less than all the facts required to establish the commission of the offense as charged
in the indictment.  See Tex. Code
Crim. Proc. Ann. art. 37.09.

However,
proof of the charged offense does not include proof of the assault to which
Appellant admitted.  Appellant told the jury that he struck Huff in the face or
head.  This assault is not included in the proof that someone stabbed Huff with
a knife that entered eight to ten inches into his body.  

This
case is like the scenario presented in Campbell v. State, 149
S.W.3d 149, 152 (Tex. Crim. App. 2004).  In that case, the defendant was on
trial for possession of drugs.  He testified on his behalf and admitted possessing
different drugs.  Id. at 150–51.  The court of criminal appeals
stated in Campbell that the “mere fact that the language in an
indictment technically covers two instances of conduct does not mean that each
instance is part of the same criminal act for which the Appellant was indicted.” 
Id. at 154.  In some cases that distinction may be difficult to
make.  In this case it is not, and the trial court did not err in declining to
instruct the jury on the misdemeanor offense of assault because proof of that offense
is not included within the proof necessary to prove the greater charge.  We
overrule Appellant’s sixth issue.

 

Competency to Stand Trial

            In
his seventh issue, Appellant argues that the trial court erred in not ordering
an evaluation of his mental competency after he escaped from custody following
the guilt/innocence portion of the trial.

Applicable
Law and Standard of Review

            A
person is incompetent to stand trial if he does not have either a sufficient
present ability to consult with counsel with a reasonable degree of rational
understanding or a rational as well as factual understanding of the proceedings
against him.  See Tex. Code Crim.
Proc Ann. art. 46B.003 (Vernon 2006).  A person is presumed to be
competent.  Id.  

            Upon
suggestion that a defendant may be incompetent to stand trial, the trial court
must conduct an informal inquiry to determine whether there is some evidence
from any source that would support a finding that the defendant may be
incompetent to stand trial.  Tex. Code
Crim. Proc. Ann. art. 46B.004 (Vernon 2006).  If the trial court
determines there is evidence to support a finding of incompetency, the court
will stay the proceedings and order further evaluation of the defendant’s
competency to stand trial.  See id. arts. 46B.004(d), 46B.005(a)
(Vernon 2006).  We review the trial court’s decision not to stay the
proceedings for an abuse of discretion.  See Luna v. State, 268
S.W.3d 594, 600 (Tex. Crim. App. 2008).

Analysis

            Appellant
escaped from custody following receipt of the jury’s verdict in the
guilt/innocence phase of the trial.  He called the police the next day and was
returned to custody without incident.  Upon his return, Appellant’s counsel represented
to the court that he had visited briefly with Appellant and he believed that Appellant
lacked the ability to comprehend the proceedings or to assist with his defense.

The
trial court conducted an informal hearing on the matter, which included hearing
testimony from the officer who apprehended Appellant.  The officer testified
that he had a conversation with Appellant and that Appellant did not appear to
have difficulty communicating with him.  The trial court, after hearing
evidence and considering its own observations, concluded that there was not
evidence to support a finding of incompetency and proceeded with the punishment
phase of the trial.

While
counsel’s statement did raise a question about Appellant’s competency, there
was countervailing evidence.  For example, Appellant was able to have a rational
discussion with the officer who arrested him.  Furthermore, that arrest
occurred after Appellant called the police and told them where he was.  The
court had also heard evidence that Appellant had previously feigned a mental
health issue to have himself admitted to a mental health facility so that he
could spend time with Kelly Green, who had gone to the facility to escape him. 
After reviewing the record, we hold that the trial court did not abuse its
discretion when it concluded that further examination of Appellant’s competence
to proceed was unnecessary after conducting an informal inquiry.  We overrule Appellant’s
seventh issue.

 

Admission of Evidence

In
one cross–issue, the State argues that the trial court erred when it did not
allow the State’s handwriting expert to testify.

The
State gave Appellant notice of six expert witnesses it intended to call twenty
days prior to trial.  The disclosure did not state their area of expertise or their
addresses, though this information may have been known to Appellant’s counsel.  It
appears that these witnesses were experts in handwriting analysis.  Texas law
provides that the state must provide, in advance of trial, the name and address
of an expert witness it proposes to call.  See Tex. Code Crim. Proc. Ann. art. 39.14 (Vernon Supp. 2010). 
Likewise, the district court judge had issued a standing discovery order in
criminal cases, which required disclosure of witnesses.[4]  

Both
article 39.14 and the standing discovery order require the defendant to request
discovery, and neither imposes any requirement on the state in the absence of a
request.  The standing discovery order states that the court “understands” that
the district attorney has an “open file” policy.  Appellant did not make a
request for discovery. 

The
State never disclosed the report generated by the expert witness to the defense.
 The State sought to call the witness on Monday, August 17, 2009, and the State
represented that the report had only been completed the Friday before.[5]  The trial court excluded the
witness.  The trial court was concerned that the late creation of a report – it
was only completed after the trial had been underway for a week-undermined
counsel’s ability to prepare.  It excused the failure to request discovery because
of a “course of dealing” between the State and the defense bar and because it
credited Appellant’s argument that he relied to his detriment on the State’s
voluntary disclosures, which tracked the discovery order.

We
express no opinion on the trial court’s discovery ruling, although we note that
any determination by the trial court that the State acted in bad faith by not
having forensic work completed in advance of trial would be entitled to some
deference.  See, e.g., State v. Wright, 830 S.W.2d
309, 313 (Tex. App.–Tyler 1992, no pet.) (overruling exclusion of one witness
but holding that the state had not presented “a sufficient record” to show
error in the exclusion of two other witnesses).  Instead, we determine that the
State has not preserved this complaint for our review.  The ordinary notions of
procedural default apply equally to an appellant and the state.  See State
v. Mercado, 972 S.W.2d 75, 78 (Tex. Crim. App. 1998).  As a predicate
to presenting a complaint on appeal, Texas Rule of Evidence 103(a) requires a
party to object to the ruling excluding the evidence and to make an offer of
proof of the excluded evidence.  When the party fails to make an offer of proof
or the substance of the evidence is not apparent from the context, the party
may not urge error in the exclusion of evidence on appeal.  See Guidry
v. State, 9 S.W.3d 133, 153 (Tex. Crim. App. 1999). 

In
this case, we could hypothesize that the expert may have testified that
Appellant authored a handwritten note that was admitted into evidence. 
However, there was no offer of proof or outline of the testimony of the witness
or her qualifications.  Therefore, we cannot conclude that the trial court’s
implicit determinations that the State should have obtained the report earlier
and that Appellant did not have sufficient time to prepare for the witness were
unreasonable.  

Even
if Appellant had preserved this complaint, the trial court instructed the State
that while it was excluding the witness, its ruling “doesn’t mean you can’t try
it some other way. . . .”  Later, Appellant testified and admitted that he
wrote the note.  Assuming the State’s evidence would have shown that Appellant
authored the note, his admission on that point had the effect of withdrawing
his objection to the expert testimony and would serve to cure any error.  We
overrule the State’s cross–issue.

 

Disposition

            Having
overruled Appellant’s seven issues and the State’s cross–issue, we affirm
the judgment of the trial court.  

 

                                                                                    Sam Griffith

                                                                                           
Justice

 

 

Opinion delivered February 28, 2011.

Panel consisted of
Worthen, C.J., Griffith, J., and Hoyle, J.

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 

(DO NOT PUBLISH)


 
 
 
 
 
 
 
  
 
 
 
 
 
  
 












[1]
Appellant did not make a written request for witnesses.  However, the State did
not argue in the trial court and does not argue on appeal that it did not have
an obligation to disclose that Kelly Green would be a witness or that the trial
court lacked the authority to require it to disclose nonexpert witnesses.  Appellant’s
counsel argued that he had relied on the State’s voluntary compliance with the
trial court’s discovery order.  





[2]
Appellant testified on his own behalf, but the State could neither compel his
testimony nor rely on him to testify. 





[3]
Citing Jordan v. State, 150 Tex. Crim. 213, 215, 200 S.W.2d 196,
197 (Tex. Crim. App. 1947), Appellant argues that the trial court impermissibly
allowed the State to offer his confession to his father by way of impeachment. 
We disagree.  Most of the complained of statements were contradictions of
Dixson’s testimony about what he perceived on the evening in question.  One
statement Green attributed to Dixson was a statement by Appellant that he
watched the police from the woods.  This is not a confession.  Appellant
asserts Green testified that Dixson told her that Appellant said he had thrown
the knife in a lake.  This statement does not appear in the passages cited by
Appellant.  Green did say that Dixson told her that Appellant “ran to get rid
of the knife,” but this appeared to be his own observation.  Later in the trial
Green testified as follows:

I knew if he
had gotten rid of the knife and was back by the time everybody was over, I
thought it had to be in Cherokee Shores.  And I knew of his favorite spot by
the lake, so I thought that’s where it might be.

She
testified that she gathered this information from Dixson, but she never
testified that Dixson told her that Appellant had thrown the knife in the lake. 
It appears that her surmise was based on her own synthesis of what she had been
told.   





[4]
The State terms this discovery order “non existent” and “now defunct” but does
not explain how this might be so.

 





[5]
Discovery issues abounded in this trial.  Appellant’s counsel complained about
a lack of notice of several witnesses and pieces of evidence.  The State
provided substantial pretrial disclosure of evidence and witnesses, but some
parts of its case, notably witness Kelly Green and the fingerprint expert’s
report, were developed late, even during the trial. As such, the discussions
about evidence spanned many volumes of the record.  There were several extrastatutory
factors in play in the trial court’s rulings on discovery matters.  First, the
State argued that there was no requirement for disclosure because Appellant had
not made a request for discovery as contemplated by the statute and the
standing discovery order.  However, the prosecutor also conceded that the trial
court “has to make a fairness inquiry . . .” in response to questioning from
the trial court about late disclosure of witnesses and, separately, did not
argue that it was not required to disclose Kelly Green as a witness.  Second,
the parties acted under the assumption that the report was required to be
provided either by statute or the discovery order.